CHARLES M. SMITH

*v.*

JOHN J. GEAR.

59    381
194   4277

59    381
;104a  2237

1. JOINT PURCHASE OF LAND—*for sale—profits.* Where two persons purchase land, as tenants in common, to be sold and the profits divided, and no time is agreed upon in which the sale is to be made, the law will require a sale in a reasonable time.

2. Where parties were purchasing stock, and one furnished money therefor, and the other to have half of the net profits when sold, and the parties purchased notes, secured by mortgage on lands, and it was agreed that the notes and mortgage were to be held by them in the same manner that they held the stock, and the mortgage was foreclosed, and the land purchased by the party who furnished the money to buy the stock, in his name, it would be error to decree one-half of the land to the person who was to have but one-half of the net profits.

3. DECREE—*sale—profits.* In such a case, it is not necessary to prove that there would be profits on a sale of the lands before the court would render a decree of sale, as it was the agreement of the parties that there should be a sale. But the chancellor might provide that the land be offered for sale, and if a sum, sufficient to yield a profit, should not be bid, decree that the party claiming the right to participate in the profits should be barred of all interest and equities in the premises.

4. In such an event, if any thing should be found due to the other party, who was to receive net profits, he would have a lien on the land for the same, and if not paid, the land should be sold to pay the same.

5. SAME—*equities of the parties.* In such a case it is error to order the property to be sold, and to reserve the question as to the equities of the parties until the coming in of the master's report.

6. LIEN—*outstanding title.* In such a case the party only entitled to share in net profits, did not acquire a lien against the land, by purchasing in an outstanding tax title and the equity of redemption, without the consent of the other party. In such a case as this, he had the right to make the purchase if he believed their rights were jeopardized; but so long as he claimed an interest in the contract, he could not purchase and set up an outstanding title. He could tender the title to the other party, and if he refused to assent to the purchase in aid of his title, for their mutual benefit, and allow what they cost or their reasonable value, the former could abandon his claim under the contract, and could use such a title adversely to the other party.

7. SALE OF THE PROPERTY—*when to be made.* In a case like this, after a reasonable time had elapsed, by use of ordinary diligence, for making a sale of the property, and it had not been sold, it was competent for the party not holding the title to file a bill to compel the property to be offered for sale, and if a sale could not be so made, and the party only having an interest in the profits failing to release his interest in the property on having any sum due him refunded, it would be competent for the other party to file a bill to have the claim of the party having an interest in the profits, extinguished, and neither party would be bound to wait an unreasonable time.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. EGBERT PHELPS and Mr. NORMAN C. PERKINS, for the appellant.

Messrs. GOODSPEED, SNAPP & KNOX, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The appellee exhibited his bill in the circuit court of Will county, in which it is alleged that, on the 30th day of March, 1865, he purchased of one Tobias, who was acting as the agent of the maker and the payee, certain promissory notes, secured by mortgage on the land in controversy, for the sum of $1650; that at the date of the transaction he was in the employment of the appellant as manager of his farm, at a fixed salary, and in addition to which appellant was to furnish

appellee funds with which to buy stock on speculation, appellee to have one-half of the net profits as compensation for his services, and the appellant the other half; that while he was so engaged in the service of the appellant, he purchased the notes and mortgage, and after some negotiations between the parties, it was finally agreed that the appellant should have a like interest in the notes and mortgage, and on the same terms as in their cattle operations ; and that the appellant then gave his draft for $1650, which appellee used in making the purchase.

Such proceedings were subsequently had, that the mortgage was foreclosed in the name of the appellee, and at the master's sale the property was struck off to the appellant as upon his bid.

The prayer of the bill is, that the appellee may have the benefit of the forclosure suit, and the sale thereunder, the same as if the premises had been struck off to him ; that an account be decreed of all matters relating to the mortgage and lands ; that the title to one-half of the lands be perfected in appellee, on his refunding what shall be found to be justly due to appellant, and the title to the other half be perfected to appellant, or, if more consonant with the terms of the original agreement, a sale of the property be ordered, and that out of the funds arising therefrom, appellee and appellant may be refunded the respective amounts expended by each of them in the enterprise, over the receipts, and that the balance may be equally divided.

The answer admits the buying of the notes and mortgage from Tobias, as alleged, but insists that the appellee, in making the purchase, acted as the agent of the appellant; that the funds used for that purpose belonged to him ; that in November, 1865, the appellee signed a communication to his solicitors in the foreclosure suit, stating that the lien on the land, to recover which suit was brought in the name of appellee, belonged to appellant; that they would bid off the property in his name and take title accordingly, and delivered the same to appellant, to

be transmitted to the solicitors, which he did; that the communication was an acknowledgment, by the appellee, that all legal and equitable obligations theretofore existing, if any, had been fully paid and discharged, and that by reason of the premises, the appellant is, and has been since the expiration of the fifteen months from the master's sale, entitled to a deed for the land in controversy, discharged from any claim of the appellee.

The answer, as originally filed, contains the following words: "And that all the interest complainant had in the transaction, was a certain share, to be given him, in the net profits, after the sale of the land," which words, the appellant, by leave of the court, struck out before the cause was brought on for final hearing.

In the view that we have taken of the case, we do not deem it necessary to comment on the allegations in the bill and answer, and the evidence relating thereto, in regard to the state of the accounts between the parties, at the date of the purchase of the notes and mortgage, for the reason that it seems to us that it is very clearly established, by the evidence given by both parties, that the funds with which the notes and mortgage were purchased belonged to the appellant. Of this there can be no dispute. The contract, as stated by the appellee himself, is inconsistent with any other theory.

It was understood, when the notes and mortgage were bought, that Johnson, the maker, would not redeem the land, and that the title would mature in the holder. We have no doubt that the original agreement between the parties was, that the notes and mortgage, or land, should be purchased on the same terms as stock had been bought and sold, on speculation, viz: that the appellant should furnish the funds, and that the appellee would be entitled to one-half of the net profits when the land should thereafter be sold. Both parties substantially testify to this agreement, and the words struck out of the answer, by the appellant, after he had sworn to it, strengthen this view of the case.

It is not pretended that, by the terms of the original contract, there was any definite time fixed in which a sale of the property should be made that would determine the profits of the transaction.   All that was said on that subject was, that there should be a quick turn made of the money invested.

It is insisted, however, by the appellant, that an arrangement was afterwards made that the sale should be made during the year 1866, and unless such sale was made during that period, that the interest of the appellee in the transaction should cease.   The answer contains no such averment, but if it did, it is an affirmative allegation, and the burden of proof to maintain it rested on the appellant.   The evidence, on this point, is not sufficient to overcome the express denial of the appellee.   We find nothing in the record that would change the original contract, and fix a definite period in which the property should be sold and the profits declared.   In the absence of any special contract, the law would imply that the property should be sold within a reasonable time.

The rights of the parties must, therefore, depend on the construction that shall be given to the contract as originally made.   It seems to us to be clear that, under the agreement, the land itself would belong to the appellant, and the interest of the appellee would only attach to the net profits arising upon a sale of the property.   He could take no interest in the estate itself.   The true construction of the agreement under which the parties were operating in stock, is, that the stock belonged to the appellant, and the only interest of the appellee was his just share of the net profits.   It was purchased for him with his funds, and the appellee had no interest, unless a profit was realized upon a sale.   The land was bought under a like agreement, and was held upon the same terms.   The prayer of the bill, that the title to one-half of the land should be perfected to the appellee, upon the payment of the just amount that should be found due to the appellant for the purchase money and expenses advanced, was properly denied by the circuit court.   It would have been

competent for the parties themselves to have declared the profits in lands, but this they did not do, and it is not in the power of the court to make any division of the estate, and decree that any portion of it is profits. It would, in effect, be to make a new contract between the parties. *Porter* v. *Ewing,* 24 Ill. 619.

The principal question that arises on the record, to be considered, is, whether the appellee, under the bill filed, and on the evidence taken on the hearing, was entitled to have the land sold and a division of the profits, if any, declared.

It is insisted that it is necessary for the appellee to show, by the evidence, that a profit would result from a sale, in order to give the court a basis on which to rest its decree.

It is a sufficient answer to this objection, that it was the agreement of the parties that the land should be sold. Such was the contract in regard to the stock, and the land was purchased on the same terms. Lands do not have a standard value, like some articles of personal property, that can be accurately ascertained by testimony. Witnesses, of equal candor and good judgment, differ so widely in their estimates of values, that it is often very difficult to form any just conclusion as to what land would bring, if offered for sale. The surest test, as to whether the land would, in this instance, bring more than the amount due the parties in interest, would be to offer it at public sale.

The court, by its decree, may so provide that no injustice will be done to either party. It would be competent for the court to decree that the property should not be sold, unless, when offered, it would bring more than the amounts which shall be found to be due to the respective parties. Upon the master reporting that fact to the court, a supplemental decree should be entered, forever barring all the interest and equities of complainant in the premises. In case, however, anything should be found to be due to the complainant for money expended for the common benefit, the court should require the

defendant to pay such amount. On his failure so to do, it would be equitable to decree that the complainant should have a lien on the premises, and have the same sold in satisfaction of his claim. In such cases, the costs are in the discretion of the court, and it can make such order as will do justice.

The circuit court, in its decree, ordered a sale of the property, without first adjusting the equities between the parties as to the amounts respectively due to each of them for money advanced in regard to the purchase and other expenses for the benefit of the enterprise, but reserved that question until the master should produce, in court, the proceeds of the sale. This, we think, was error. It is indispensable that the court should first adjust the amounts, respectively, due, in order to obtain a basis upon which to found an equitable decree for the sale of the estate.

It appears that the appellee has since bought a tax title on the premises, and also the equity of redemption of Johnson, the mortgagor, and now asks to have the amounts paid for the same taken into the account in adjusting the equities between himself and the appellant.

These purchases were made without the knowledge or consent of the appellant, and the appellee can not compel him to consent to the purchase in aid of his title, unless he chooses so to do. The appellee had no right to buy up an outstanding title, whether it is good or bad, and tack it to the original transaction, without the consent of the appellant. If such was the rule of law, he might buy a worthless title, at an unreasonable price, under a collusive bargain with the holder, for the purpose of reducing the share of the profits that would enure to the appellant in the undertaking.

In case he believed that their interests would be jeopardized by an outstanding adverse title, he would have the indisputable right to buy it in for their protection. But so long, however, as the appellee claimed an interest in the premises, under the contract, he could not assert the titles so purchased,

adversely to the interests of the appellant under that contract. It would be his duty to tender such titles to the appellant, and if he declined to assent to the purchase in aid of his title, for their common benefit, and allow what they cost, or, at least, their reasonable value, he could then, by abandoning his claim under the contract, use the titles so obtained, to his own use and benefit—even adversely to the title of the appellant.

In the view that we have taken, the decree of the circuit court is erroneous and must be reversed.

It will be the duty of the circuit court to refer the cause to the master, to ascertain and report the amount due to the appellant for the purchase money advanced and expenses incurred in perfecting the title, and also, for any permanent improvements made on the premises, and also, for taxes paid, less the net proceeds actually received in rents from the lands.

If the appellant shall elect to avail of the titles purchased by the appellee, the court will direct the master to find the amount due appellee therefor, and also the amount that the appellee may have expended in and about the purchase, for the common interest, and will deduct therefrom any amount he may have received in rents from the lands. The master will allow the respective parties interest, at the rate of ten per cent per annum, on the amounts by them advanced in the transaction.

Upon ascertaining the amounts due to the parties on the basis suggested, the court will decree a sale of the lands; and in case a sale can be effected that will produce a profit over and above the amount that shall be found due, out of the proceeds the court will order and direct: first, that the costs in the circuit court shall be paid; second, that the amounts that shall be found due to the parties, shall be fully paid; and third, the balance shall be divided equally as profits.

A reasonable time having elapsed, in which the appellant, by the exercise of ordinary diligence, could have made a sale

of the property, it was entirely competent for the appellee to file a bill to compel him to make such sale ; at least, to offer it at public sale, to the end that he might be permitted to enjoy his just share of the profits. On the other hand, if a sale could not be made, after the elapse of a reasonable time, so as to realize a profit, and the appellee would not release his interest on payment of whatever amount he may have actually advanced, it would be competent for the appellant to file a bill with proper averments, and, upon satisfactory evidence, to have a decree that would cut off and forever bar his interest in the premises. Neither party would be bound to wait an unreasonable time to see if a sale could be effected by which a profit would be realized.

It is to the interest of both parties to such a transaction, that the relation in some way should be terminated. In case the parties can not mutually agree, we are of opinion that either party, after the elapse of a reasonable time, may have the relations dissolved, and the equities between them adjusted, filing a proper bill for that purpose.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*