Robert H. Tinker et al. v. Annie C. Babcock et al.

1. ADMINISTRATION OF ESTATES—*Claims Not Presented Within Two Years from the Time of Granting Letters of Administration.*—A claim against an estate must be presented within two years from the time of granting letters of administration or it will be barred by the statute

Tinker v. Babcock.

except as to other estates of the decedent not inventoried or accounted for by the executor or administrator.

2. SAME—*No Action Can Be Maintained Against the Heirs Where the Personal Property of the Decedent is Sufficient to Pay the Debts.*—No action can be maintained against the heir of a decedent, where his personal property is sufficient to discharge all just demands against his estate.

3. SAME—*Judgment of the Probate Court is a Judgment in Rem.*—The judgment of the Probate Court, awarding distribution, is a judgment *in rem*, and is binding on all creditors and others who had an opportunity to be heard.

Bill to Cancel a Note and Judgment, etc.—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed February 26, 1903.

KRETZINGER, GALLAGHER & ROONEY, attorneys for appellants.

HARLAN & BATES, attorneys for the heirs of Benjamin H. Campbell, appellees.

BENTLEY & BURLING, attorneys for Thomas D. Catlin, appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

April 9, 1901, appellants filed their bill against the appellee Catlin and the other appellees, being the heirs and devisees of Benjamin H. Campbell, deceased, by which appellants in substance claim that they were sureties upon a certain promissory note dated October 1, 1890, for the sum of $34,290.05, made by them, said Campbell and one Stevens, payable to the order of said Catlin six months after its date, and ask a decree based upon the allegations of the bill discharging them from all liability on the note, or that the court decree that the filing of a certain petition of said Catlin in the Probate Court of Cook County, against the estate of said Campbell on November 24, 1891, and particularly described in the bill, is a proper filing of the claim of said Catlin on said note against said estate; that the court assume the further administration of said estate, allow the claim of Catlin against the same, and sequester

sufficient assets of said estate in the hands of said heirs and devisees to pay the same; or that the court decree that said heirs and devisees are severally, to the extent of assets received from the estate of said Campbell, in equity obliged · to discharge the indebtedness to Catlin and wholly exonerate the appellants therefrom; and also asks for general relief. To the bill, as finally amended, the chancellor sustained demurrers and the bill as amended was dismissed for want of equity, from which decree dismissing the bill this appeal is taken.

It is conceded by appellants that, as to the appellee Catlin, said note was signed by them, said Stevens and Campbell, as apparent makers, and that all said makers were directly liable to Catlin upon the maturity of the note, without any action on his part. Appellants, however, set up certain matters in the bill, which, for the purposes of this decision must be taken as true, and from which it appears that as to them said Campbell was a principal upon the note, and they were his sureties, and that Catlin had knowledge of this fact at the time the note was made.

This note became due April 1, 1891, and said Benjamin H. Campbell, after having made his last will and testament, died November 28, 1890, leaving an estate valued at more than one million dollars, and the appellees, his heirs at law and devisees under said will. Letters testamentary issued on the estate of Campbell February 6, 1891, the estate was converted into cash, amounted to the sum of $1,184,368.44, and the expense of administration and debts of the estate proven amounted to $65,716.40. December 30, 1893, more than two years after the granting of letters testamentary, the residue of the estate, after the payment of debts and expenses of administration, was distributed to the appellees, the said heirs and devisees of said Campbell, deceased, each receiving $139,831.50. Appellants filed no claim against the Campbell estate.

Under Sec. 67, Ch. 3 of the Revised Statutes (Hurd), appellants had the right to file their claims against the estate of said Campbell by reason of their liability as sure-

ties upon the said note with Campbell, and having failed
so to do, their claim against said estate is effectually barred
by the 7th clause of Sec. 70 of said Chap. 3, except as to
other estate of the decedent not inventoried or accounted
for by the executor or administrator.    It is not claimed that
there is any other estate of said Campbell not inventoried
or accounted for.    Ingram v. Ingram, 172 Ill. 287; Ras-
sieur v. Jenkins, 170 Ill. 503; Snydacker v. Swan Land Co.,
154 Ill. 220; Dunnigan v. Stevens, 122 Ill. 403; Morse v.
Pacific Ry. Co., 191 Ill. 356.

In the Ingram case, *supra*, Seth Ingram had assumed the
payment of a mortgage on certain real estate which he
thereafter conveyed to his son, Samuel Ingram, who had
originally made the mortgage and the note secured thereby.
After the father's death and before the maturity of the
note and mortgage, on petition of the son, the Probate
Court directed the executor of the father's estate to pay
the mortgage debt.    This judgment was affirmed.    The
court, among other things, say :

" Inasmuch as the estate was liable for this money by
reason of the contract between Seth and Samuel Ingram,
and the covenant in the deed, the holder of the note and
mortgage was not bound to prove his claim against the
estate, but might proceed against the land by foreclosure, or
proceeding at law against Samuel Ingram.    *    *    *    The
holder of the mortgage, the executor and all the heirs were
in court, and the court could, by an adjudication binding
on all parties, have directed the payment of the Hodge
claim by the administrator, and directed the payment of
the sum paid by Samuel Ingram on the interest.    In the
administration of estates equitable rules prevail."

It thus appears that the son, although in the position of
surety to the father, and although the maker of the incum-
brance assumed by the latter, was allowed to prove his
claim against the father's estate before it became due and
before he had paid anything thereon except interest.    We
think the case closely analogous to the one at bar.

In the Rassieur case, *supra*, the court had under consid-
eration the statute with regard to the presentation of
claims against an insolvent estate, and held that it was

analogous to the statute here under consideration with regard to the presentation of claims against a decedent's estate, and that claims of creditors against an insolvent estate, whether due or to become due, must be presented within the three months allowed by the statute, or they would be barred from any participation in dividends until after the payment of all claims presented within that time and allowed by the court.

In the Snydacker case, *supra*, in a carefully-considered opinion, the court held that a claim against a decedent's estate for an assessment upon corporate stock was barred, except to subsequently discovered estate, by a failure to exhibit it within two years from the grant of letters, notwithstanding the assessment was not made until the two years had expired.

In the Dunnigan case, *supra*, it was held, construing the statute here under consideration as to the presentation of claims against estates of deceased persons, that the indorsee of notes not due when the liability of the indorser was absolute—not dependent upon any conditions—might have a claim allowed against the estate of such indorser. So in this case, when the note became due, appellants' liability thereon was fixed, as well as that of Campbell, and there is no reason why they could not have presented a claim against the Campbell estate at any time after the note became due. Not having done so, it seems clear that their claim is barred, except as to uninventoried assets of the Campbell estate and, as we have seen, there is no claim of any such assets.

In the Morse case, *supra*, the doctrine of the Snydacker case is re-affirmed, and it was there held that although a suit was pending in the Circuit Court against a party at the time of his death, and might have been revived against his executors within two years of the granting of letters on his estate, so that the decree would bind inventoried assets, that did not amount to an exhibition of the claim or demand made against the estate, notwithstanding, also, the further fact that the executors had knowledge of the

claim, and the claim not having been filed in the County Court within two years of the issuance of letters, was held to be barred except as to uninventoried assets.

The claim of appellants being barred at law, it follows that equity, as a general rule, following the limitations at law, will hold that a bill seeking to reach assets of the estate of a decedent in the hands of heirs and legatees, would also be barred, unless there is some peculiar equity set out in the bill which would make the case an exception to the general rule. 1st Pomeroy's Eq. Juris., Sec. 419; 1st Story's Eq. Juris. (12th Ed.), Sec. 529; Blanchard v. Williamson, 70 Ill. 647–50; Boone v. Colehour, 165 Ill. 305–14, and cases cited; Fitch v. Miller, 200 Ill. 170–85.

In the Blanchard case, *supra*, the appellee filed a bill against the executrix of an estate to compel payment of a certain note alleged to have been made by the decedent, and claiming that assets came to the hands of the executrix which she had failed to inventory, and asking that the note be paid out of the uninventoried assets. It was held that equity had no jurisdiction, because the appellee had failed to file a claim against the decedent's estate. Among other things, the court say :

"No principle of law is better settled, than, where the law affords a remedy, and a party neglects to avail of it, equity will not assist him after his rights have been barred by the statute of limitations."

And the court, after discussing the two years statute here in question, further say :

"It is an elementary principle, that where the law affords a party an adequate remedy he must pursue it. The facts in this case afford no reason for a departure from this well established rule. The claimant was under no disabilities, and there was nothing to prevent her from presenting her claim against the estate and, if just, in procuring its allowance. She must first pursue her remedy given by the statute."

In the Boone case, *supra*, the court say :

"The general rule is, where there is concurrent jurisdiction between courts of equity and courts of law, the former

will refer to the statute as a means of determining the period in which the bar will be complete in equity."

In the Fitch case, *supra*, the court, quoting from a previous case, say:

" When a court of equity is asked to lend its aid in the enforcement of a demand which has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and a reasonable diligence of the parties seeking its relief, are the elements that call a court of equity into activity."

No sufficient reason is shown by this bill why appellants did not file their claim against the Campbell estate. More than two years elapsed after the note became due before that estate was settled.

In any event, this bill, not having made the executor of the Campbell estate a party, can not be maintained, because the remedy of appellants in that regard would be to first have the claim allowed against the estate and then proceed to collect it from property not inventoried or accounted for by the executor. It is not claimed that any such property exists or can be found.

The fact that the executor of Campbell is not made a party precludes any relief to appellants as against the estate of Campbell, under the prayer for a decree as to the petition of Catlin filed in the matter of said estate.

It appears from the bill that at the May, 1891, term of the Superior Court, Catlin, having sold certain collaterals deposited with him as security for the note by which the debt was reduced to about $18,000, began suit thereon against Stevens and appellants, which was defended by appellants, but judgment was obtained by Catlin against appellants and Stevens in June, 1891, for $18,169.93, from which an appeal was taken to this court by appellants, where it was affirmed, and the judgment of this court was later affirmed by the Supreme Court; that, on the day said suit was brought Catlin stated to appellants that he intended to commence at that time a separate proceeding against the estate of Campbell for the collection of the note; that appellants believed such statement and relied on it; that on November 24,

1891, Catlin filed in the Probate Court of Cook County a petition in the matter of the estate of Campbell, addressed to the judge of said court, which states the issuing of letters to the executor February 6, 1891; that no inventory had been filed in that court; that Catlin was a creditor of the estate to the amount of upward of $18,000, and prayed a citation to the executor requiring him to file an inventory in said estate within a short time to be fixed by the court; that appellants relied on the statement of Catlin and upon his duty as a creditor, and the primary liability of Campbell, that Catlin would not fail to present his said claim and collect his said debt from said estate; but Catlin took no proceedings in the Probate Court to collect said debt evidenced by said notes as aforesaid from said estate of Campbell, except to file the petition as aforesaid; that had Catlin prosecuted his claim against the estate of said Campbell in the Probate Court, as it was his duty in law and equity to do, the same would have been allowed and thereupon ordered fully paid and discharged, as said estate was amply able to pay said claim in full.

It is further alleged in the bill :

" That Cyrus Bentley is and has been since the death of Campbell, the counsel for his estate; that Cyrus Bentley was the attorney of record for said estate of Campbell in the Probate Court, and acted as attorney and counsel for said estate during the year 1901; that said Cyrus Bentley acted as one of the attorneys of record for said Catlin in defending the cause in equity instituted by complainants as aforesaid; and complainants charge that Catlin abandoned his proceedings in the Probate Court and wholly failed, after the filing of his petition as aforesaid, to prosecute his claim against said estate because of a certain agreement and arrangement negotiated by said Cyrus Bentley between Catlin on the one hand and the estate of Campbell on the other, shortly after the presentation of said petition, the exact terms of which agreement or arrangement complainants have been unable to learn, the same having been persistently concealed by the parties thereto. That shortly after the presentation of said petition to the Probate Court by Catlin, it was arranged in some form by said Cyrus Bentley and agreed to by Catlin and the estate of

Campbell that no further steps should be taken to collect said debt from the estate of Campbell, but that the collection of said debt would be forced, if possible, out of complainants—the said estate agreeing in some way that in case it finally proved impossible to force the collection of said debt from complainants, then the estate would see to its payment. Complainants are informed and verily believe and charge the truth to be that a fund or other security has been especially appropriated by the estate of Campbell and somewhere deposited for additional and continuing security and the ultimate payment in case Catlin does not realize his claim out of complainants."

It is claimed for appellants, the claim being based on the foregoing allegations, that appellants, as sureties of Campbell, are released from all liability to Catlin, and in any event they are entitled to a decree compelling the estate of Campbell to pay said judgment to Catlin and exonerate appellants therefrom. We think the claim is not tenable.

Appellants' liability to Catlin was direct—not as sureties. They were, as to him, makers of the note equally with Campbell, and Catlin had a perfect right to pursue them before the Campbell estate, if he saw fit. Consequently all authorities relied on by appellants as to the discharge of a surety by agreement of the creditor to extend time of payment to the principal, have no application.

It is a sufficient answer to that part of the claim that asks a decree against the Campbell estate, that this estate is in no way a party to bill. The executor is not a party, and the heirs and legatees made parties do not represent the estate.

Besides, appellants having had full opportunity, from the maturity of the note, April 1, 1891, to February 6, 1893, the latter date being the expiration of two years from the issuing of letters testamentary on the estate of Campbell, within which to file their claim against that estate, are, under the authorities above cited, barred in equity from proceeding against the executor of the estate, and, as we think, against the heirs and legatees. We need not discuss authorities from other jurisdictions, relied on by appellants, since the decisions of the Supreme Court are in point, and

controlling on this court. Moreover, the bill can not be maintained against the heirs and legatees of Campbell, for the reason that it appears from the bill that the personal estate of the decedent was amply sufficient to pay the expenses of administration and debts proven against the estate, and it is not claimed that the heirs have received any real estate. There is no covenant of Campbell by which his heirs can be bound—only Campbell's simple obligation to pay a note on which appellants are sureties, according to the bill. Such being the facts, appellants only course is to pursue the executor, which they have not seen fit to do. Guy v. Gericks, 85 Ill. 428, and cases cited; Hoffman v. Wilding, 85 Ill. 453; Laughlin v. Heer, 89 Ill. 119; People v. Brooks, 22 Ill. App. 594; affirmed, 123 Ill. 246; Potter v. Campbell, 45 Ill. App. 174; affirmed, 147 Ill. 576.

In the Brooks case, *supra*, in speaking on this subject, and referring to the 12th section of the statute of frauds, this court says:

" The theory of this statute seems to be that as personal property descends to the administrator to be distributed in due course of administration, and real estate descends directly to the heir, the heir is to be charged with the debts of his ancestor when and only when the personal estate, which the law regards as the primary fund for the payment of debts, is insufficient for that purpose. It is accordingly held in Guy v. Gericks, 85 Ill. 428, that under this statute no action can be maintained against the heir of a decedent, where his personal effects are sufficient to discharge all just demands against his estate. The same rule was re-affirmed in Laughlin v. Heer, 89 Ill. 119. We are of the opinion, then, that for this reason also, the action in the present case can not be maintained."

It is also further said:

" Creditors will not be permitted to lie by and remain silent during the course of the administration, and then seek to follow personal property into the hands of the heir or other distributee, and wrest it from him for the purpose of applying it to their debts. The judgment of the Probate Court, awarding distribution, is a judgment *in rem*,

and is binding on all creditors and others who had an opportunity to be heard."

This case is affirmed in 123 Ill. 246, the court holding that there was no liability of the heir either at common law or under the statute, re-affirming the Guy, Hoffman and Laughlin cases, *supra*, and distinguishing the case from Dugger v. Oglesby, 99 Ill. 405, in which the cause of action did not accrue until after the expiration of more than two years from the date of the grant of letters of administration.

We find nothing inconsistent with the foregoing cases in the recent case of Mackin v. Haven, 187 Ill. 480–91, cited by appellants, in which the claim was upon a specialty—a lease under seal—that by its express terms bound the heirs of Mackin. The court distinguishes the case from each of the cases referred to above, except the Potter case, which is in line with the others.

Inasmuch as the views expressed seem sufficient reasons why the demurrers were properly sustained, it is unnecessary to discuss other claims of the respective counsel.

The decree of the Circuit Court is affirmed.