ROBERT S. MACDONALD, Appellee, vs. CHARLES DEXTER, Appellant.

*Opinion filed June 18, 1908.*

1. CONTRACTS—*when agreement does not create trust or a freehold interest in land.* A duly signed agreement reading: "I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land, (when sold,) being the same land this day bought .by me from Eugene Latinette, in St. Clair county, Illinois," is an agreement relating to profits, as personal property, and does not create a trust or freehold interest in the land itself.

2. RES JUDICATA—*when judgment of foreign court is res judicata.* A judgment of a foreign court having jurisdiction, which determines the rights of the parties under a contract relating to the division of profits from the sale of land, is *res judicata* and binding in Illinois in a subsequent suit between the same parties on the same cause of action respecting the same subject matter, even though the land, which was to be sold to realize the profits contemplated by the contract, was located in Illinois.

3. SAME—*when party is not estopped to plead foreign judgment as res judicata.* One who begins, in Illinois, a suit to partition land, naming a certain person as defendant upon ground that he claims some interest, under a contract, which constitutes a cloud on the title, is not estopped to subsequently plead as *res judicata* a judgment of a court of last resort in a foreign State, rendered, after the partition suit was begun, in an action between the same parties with reference to the same subject matter and cause of action, and determining that the contract created no interest in the land.

APPEAL from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

Appellee, Robert S. MacDonald, filed a bill in the circuit court of St. Clair county for the partition of certain land, alleging that it was owned by his father at the time of his decease and passed by descent to the said appellee and his brother, Malcolm W. MacDonald, and sister, Helen Hunt MacDonald Jones, as the only heirs-at-law. The appellant, Dexter, was made a party on the ground that he claimed some interest in the premises which constituted a

cloud on the title. Other persons named Quellmalz were also made parties as claiming an interest, but not in any part of the land which is directly involved in this case. The appellant, Dexter, filed his answer, claiming to be the owner of an undivided one-half interest in certain blocks and portions thereof in MacDonald's East Claremont addition to the city of East St. Louis by virtue of the following transactions: He claimed that on March 19, 1890, he entered into a contract in the name of one George Allen, but in fact for his own benefit, for the purchase from Eugene Latinette of forty acres of land, including the parts in question of the East Claremont addition, for a purchase price of $3000, paying as earnest money $100; that he afterwards made an agreement with Robert S. McDonald, the father, whereby the latter re-paid to said Dexter the $100 and paid to said Latinette the $3000, taking a warranty deed to the premises from Latinette to said Mac-Donald, dated April 23, 1890; that MacDonald thereupon delivered to appellant a written memorandum (a copy of which is given in the opinion following); that a portion of the land was afterwards sold for $11,150, and MacDonald reserved the $3000 and divided the remainder between himself and appellant; that later MacDonald conveyed another piece of the forty acres, and perhaps other pieces as to which appellant was uninformed, but that the said three heirs of Robert S. MacDonald held their respective undivided third interests of the land now in question subject to said Dexter's equitable title and beneficiary ownership of an undivided half of said property. Appellant, Dexter, also filed a cross-bill setting forth substantially the same facts as in his answer. In the various pleadings filed to the cross-bill and answer said Robert S. MacDonald and his brother and sister set up the claim that the matter of Dexter's rights under the contract had been litigated, on the petition of said Dexter, in the circuit court of the city of St. Louis, and that upon being taken to the Supreme Court

of Missouri that court reversed the finding of the lower court and found against the claims of Dexter. To an amended bill setting up this matter in reference to the Missouri litigation Dexter answered, claiming that the Supreme Court of Missouri was without jurisdiction to determine his claim in and to real estate located in Illinois; furthermore, that the complainant in the partition proceedings was estopped from setting up that litigation. After the pleadings were settled the court heard evidence as to heirship and other formal matters, and entered a decree of partition, finding, among other things, that the judgment of the Supreme Court of Missouri was binding upon said Dexter and that he had no interest in the real estate in question. Appellant thereupon appealed to this court.

WISE & MCNULTY, BROWNRIGG, O'BRIEN & MASON, and BENJAMIN J. KLENE, for appellant.

HICKMAN P. RODGERS, and A. H. BAER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main contention in this case is whether or not the questions involved in the decision of the Supreme Court of Missouri (*Dexter* v. *MacDonald,* 196 Mo. 373,) are *res judicata.* The record before us conclusively shows that the parties, subject matter and cause of action in the Missouri litigation were identical with those in this proceeding. This being so, under the general rule the judgment of the Missouri court is conclusive on this hearing. (*Hanna* v. *Read,* 102 Ill. 596; *Ruegger* v. *Indianapolis and St. Louis Railroad Co.* 103 id. 449; *Chicago Theological Seminary* v. *People,* 189 id. 439.) This general rule is admitted by appellant, and he also admits that the judgment or decree of a sister State is entitled to the same credit, validity and effect in every other court of the United States as it enjoys in the State where pronounced, if the court has jurisdiction

of the subject matter and of the parties, and that this is
the settled practice under section 1 of article 4 of the Fed-
eral constitution. (*Knowlton* v. *Knowlton,* 155 Ill. 158;
*Burnley* v. *Stevenson,* 24 Ohio St. 474; *Hanna* v. *Read,*
*supra.*) He contends, however, that these general rules do
not apply here, as the courts of another State are with-
out jurisdiction to render a decree directly affecting title to
land in this State. (*McCartney* v. *Osburn,* 118 Ill. 403;
*Cooley* v. *Scarlett,* 38 id. 316; *Carpenter* v. *Strange,* 141
U. S. 87.) He maintains that as the claim here in question
affects the title to land in Illinois, the courts of Missouri,
while having jurisdiction of the parties, did not have juris-
diction of the subject matter; that therefore the decision of
the Missouri Supreme Court is not *res judicata.* The claim
of appellant is based upon the following writing:

"St. Louis, Mo., *April 23, 1890.*
"I hereby agree to allow Charles Dexter one-half of the net
profits of the sale of the forty acres of land, (when sold,) being
the same land this day bought by me from Eugene Latinette, in
St. Clair county, Illinois.
　　　　　　　　　　　　　　　　　　R. S. MacDonald."

The main facts which caused the father of appellee to
give this memorandum to appellant are set out in the plead-
ings, as shown in the statement heretofore given. All of
the purchase price for the land in question was paid by the
father of appellee and none by appellant. Manifestly, on
the record before us he was to be allowed half the net profits
of the sale in consideration of his turning over his option
for the purchase of the land to MacDonald. Whatever
right appellant has must be based upon this written mem-
orandum. If he has the interest he contends for, it must
be because an express trust giving that interest is created
by this writing. Whatever talk or understanding the par-
ties had previous thereto must be held to be merged in this
written memorandum. (21 Am. & Eng. Ency. of Law,—
2d ed.—p. 1078.) Hence the trust, if any, must be held
to be express, and not an implied or resulting trust, as ap-

parently contended by appellant. (15 Am. & Eng. Ency. of Law,—2d ed.—1123.)

This court had under consideration a similar written memorandum or agreement in *Morrill* v. *Colehour,* 82 Ill. 618. The memorandum there in question showed that the party who did not hold the title to the land but was to receive a part of the net profits had advanced a part of the purchase money, and the writing set out its purpose with greater detail than the one now under consideration. In discussing that agreement we said (p. 625) : "The written agreement executed by W. H. Colehour only binds him to pay appellant and the others equal portions of the one-half of the net profits arising from the sale of the lands. It in no event bound him to convey the land, nor can we imagine any state of facts that could arise under the agreement that would require a court of equity to compel him to convey the land to them. Had he failed or refused to proceed to make sale as was contemplated by the parties, he could, no doubt, have been compelled to do so, or another would have been appointed for the purpose by a decree of court. By this agreement this was not an interest in or title to the land, but it was an agreement to give appellant, and pay to him, profits that might be realized from the sale of the land. * * * It was not in the contemplation of any of the parties that W. H. Colehour should ever convey a foot of this land to them or either of them. The purchase was made for the purpose of sale and the acquisition of profits. It was, not bought to hold, as land, but simply as an article of commerce and for speculation, and for that reason equity regards it as personal property among the partners. In such cases the intention of the parties stamps the character of the transaction." In the later case of *Roby* v. *Colehour,* 135 Ill. 300, this court again had the same memorandum agreement under consideration, and stated (p. 336) "that the beneficiaries under that instrument took no interest in or title to the land itself, but that

their interest was only in the profits, as to which their relation was that of partners." In *Boone* v. *Clark,* 129 Ill. 466, *VanHousen* v. *Copeland,* 180 id. 74, and *Ingraham* v. *Mariner,* 194 id. 269, this court referred with approval to the construction that had been placed upon the writing in question in *Morrill* v. *Colehour, supra.* In the *Ingraham case,* just cited, this court held that the writing there under consideration gave an interest in the land because it so stated in terms, and reiterated the doctrine that the character of the transaction in such cases is shown by the intention of the parties, and that such intention must be determined by the terms of the contract itself.

The Supreme Court of Missouri, in *Dexter* v. *MacDonald, supra,* in discussing this written agreement, after a review of the authorities, stated that the case of *Morrill* v. *Colehour, supra,* nearest approached the one under consideration, and, we think, rightly held that the *Morrill case* "clearly and correctly announces the law applicable to the facts as disclosed by the record in that proceeding," and that as they considered such ruling sound and logical it would be followed in construing the written memorandum here in question. There is better ground for contending that the memorandum in the *Morrill case* was intended to convey an interest in land than there is for that contention as to the memorandum here in question, and that decision must be held to control on the question here under discussion.

Appellant, however, insists that it must be held that this memorandum gives a freehold interest in real estate, relying on the rule laid down in many decisions of this court that where the necessary result of the judgment or decree is that one party gains and another loses a freehold estate, or where the title to a freehold estate is so put in issue by the pleadings that a decision of the case necessarily involves a decision of such issue, a freehold is necessarily involved. (*Hayes* v. *O'Brien,* 149 Ill. 403; *Hibernian Banking Ass.* v. *Commercial Nat. Bank,* 157 id. 576; *San-*

*ford* v. *Kane*, 127 id. 591.) What we have already said we think fully disposes of this question, but it is so strongly urged by appellant that we deem it proper to consider it briefly.

As was stated in *Morrill* v. *Colehour, supra,* if Mac-Donald had failed or refused to make the sales contemplated by the parties he no doubt could have been compelled to do so. But this did not give Dexter an interest in the land. In *Smith* v. *Gear*, 59 Ill. 381, in discussing a similar question, we said (p. 385): "It seems to us to be clear that under the agreement the land itself would belong to the appellant, and the interest of the appellee would only attach to the net profits arising upon a sale of the property. He could take no interest in the estate itself. The true construction of the agreement under which the parties were operating in stock is that the stock belonged to the appellant, and the only interest of the appellee was his just share of the net profits. It was purchased for him with his funds, and the appellee had no interest unless a profit was realized upon a sale. The land was bought under a like agreement and was held upon the same terms. The prayer of the bill that the title to one-half of the land should be perfected to the appellee upon the payment of the just amount that should be found due to the appellant for the purchase money and expenses advanced was properly denied by the circuit court."

The facts in the case just quoted from made it stronger in support of appellant's contention than do the facts here. There is an intimation in the opinion in the *Smith case* that if, upon proper steps being first taken, there were shown to be any profits, the party in question might have a lien for them. Viewed in the light most favorable to appellant, it would have to be first shown that the contract in question was still in force (the Missouri Supreme Court decided that in this case appellant had through *laches* lost all right of action) and that the land could be sold for a profit be-

fore he would be entitled to any claim as to the proceeds. Even if appellant had placed this memorandum on file in St. Clair county, Illinois, clearly he could hold neither the land so sold, nor the purchaser, for his share of the profits. But conceding, for the sake of the argument, that he had some kind of a lien for his share of the profits, this would not give, as he contends, a freehold interest. This court has held that a bill to remove a cloud from the title to real estate does not necessarily involve a freehold; that it depends upon what it is that is claimed to be a cloud. (*Hutchinson* v. *Howe,* 100 Ill. 11.) Whatever his lien, it could give him no greater right or interest in the land than a trust deed or mortgage. We have repeatedly held that in a proceeding to foreclose a mortgage on real estate a freehold is not involved. (*Pinneo* v. *Knox,* 100 Ill. 471; *Burroughs* v. *Kotz,* 226 id. 40; *Lynch* v. *Jackson,* 123 id. 360.) We have also held that a bill seeking to have a deed absolute on its face declared a mortgage did not involve a freehold, (*Eddleman* v. *Fasig,* 218 Ill. 340, and cases there cited,) and that a freehold is not involved in an executory or conditional contract to convey land. (*Payne* v. *White,* 207 Ill. 562.) This contract obviously was not intended to give appellant any right to have a portion of the land in question conveyed to him or to give him any interest of any kind in the land itself, but only an interest in the net profits that might arise from its sale. Whatever right or claim appellant might have as to the profits would not require the court to deal directly with the land itself, and would not, therefore, affect the real estate, hence it affords no objection to the jurisdiction of the Missouri court, which had all the parties in interest before it, even though the land out of which the profits were to arise was without the jurisdiction of the court. *Johnson* v. *Gibson,* 116 Ill. 294.

Appellant makes the further contention that appellee is estopped from claiming that the decision of the Supreme Court of Missouri is a final adjudication of the matters here

in issue, because these proceedings were instituted after the trial court in Missouri had decided the case but before the final decision of the Supreme Court of that State had been rendered.  The argument is, that appellee's position now in pleading the Missouri decision as *res judicata* is not consistent with the position he took in starting the suit in the Illinois court, citing Bigelow on Estoppel, (5th ed.) 717, and other authorities, which lay down the rule that parties in court are not permitted to assume inconsistent positions in the trial of their cases.  While we are in full accord with that rule we do not think it applies here.  We are also in accord with the rule laid down in *Bell* v. *Hoagland,* 15 Mo. 360, and *In re Chandler's Appeal,* 100 Pa. 262, cited by appellant, that where a matter becomes *res judicata* it is mutual and equally obligatory upon both parties; if it is not binding upon both it binds neither.  We think, without question, the Supreme Court of Missouri having jurisdiction of the persons, and the subject matter in the two proceedings being identical, the decision of that court must be held to be binding upon all the parties, and must have been so held whether the decision of the Missouri court had been pleaded or offered in evidence by appellee or by appellant in this proceeding.  It is admissible under the general issue to give in evidence a former recovery.  (*Kapischki* v. *Koch,* 180 Ill. 44.)  When a judgment in a court in another State was not rendered until after a mortgage foreclosure case was at issue, it was held that when the foreclosure case came to a hearing the judgment might be given in evidence under an answer setting up a defense of the same nature as that involved in the case in which the judgment was obtained, even though said judgment, from the necessity of the case, was not pleaded as an estoppel.  (*Sheldon* v. *Patterson,* 55 Ill. 507; see, also, *Walker* v. *Ogden,* 192 id. 314; *Consolidated Coal Co.* v. *Peers,* 166 id. 361.)  The authorities cited by appellant on this point do not attempt to distinguish, on the question of former adjudication, be-

tween the judgments entered in this State and the judgments entered in other States, either as to setting out such former adjudication in the pleadings or as to introducing proof of it in evidence. If the proceeding started in the St. Louis courts by appellant had been started in this State and proceeded to a final decision by the Supreme Court of this State, and the trial court, before the final decree in this proceeding, even though former adjudication had not been pleaded in the first instance, could not, when the matter was called to its attention, permit such final decision to be shown, the usefulness of the courts of justice would indeed be paralyzed.

We think the circuit court ruled correctly in holding that the judgment of the Supreme Court of Missouri was binding upon Dexter and that he had no interest in the real estate in question. The decree of the circuit court will therefore be affirmed.