## PRICE v. BLOCK et al.
### No. 7595.

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1941.

John A. Brown, of Chicago, Ill., for appellant.

Harry J. Myerson and Irving S. Toplon, both of Chicago, Ill. (David H. Kraft, of Chicago, Ill., of counsel), for appellees.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

By this action appellant sought equitable relief upon the following facts alleged in the complaint: There is diversity of citizenship, and more than $3,000 is alleged to be involved. Julian D. Block was a chemical engineer and a citizen of Illinois. He disclosed to appellant certain mechanical and chemical developments, to wit: a dye stripping process for bleaching, reclaiming and redyeing woolens, silks and other fabrics; a process for the manufacture of synthetic sugar; a process for the decaffeinization of coffee; and a process for the generation of hydrogen gas from water. The first three were patented.

Block made a verbal offer to appellant that if he would secure the financing of the

synthetic sugar by means of securing a sale of that patent and formulas outright, or if appellant were able to secure and carry out a royalty contract, or to secure and carry out the formation of a company that would carry on the production and manufacture of the sugar, Block would turn over to appellant one-half interest in that patent and processes, and would divide equally all profits derived therefrom, or in case of the formation of a company for such purposes, Block would divide equally with appellant any stock received by Block in the company.

Appellant alleges that he accepted the verbal offer and did within the month following secure parties willing and financially able to close a deal under any one of the plans offered by Block, provided Block would furnish a chemical test or demonstration of his ability to produce synthetic sugar by his patented process. Block fixed the date for such test as of July 17, 1938, and notified appellant. When appellant came to Chicago on that date for observing the test and closing the deal, Block told him that he would neither make the test nor close the deal until he had completed his hydrogen gas development and its demonstration; that the sugar could wait, and if Block were not there, his sons could carry it on as they had full knowledge of the process and were able to make the test and demonstration.

Thereupon Block detailed to appellant his success in the development and control of his hydrogen gas. He said that he needed a demonstrating model in order to establish his ability to easily and cheaply generate and control such gas; and that he was financially unable to secure the model, or to protect his disclosures by patent. Thereupon he offered appellant one-half interest in the secrets and processes and the contemplated patents relating thereto, and also one-half interest in all profits therefrom, as a joint adventure in the production and development of the gas, if appellant would advance $5,000 as his portion of such joint adventure. Block said he would not want the entire sum at once, but only as the development progressed. He said it would be used by him for the materials in making the model, and would also cover the costs for drawings, searches, attorneys' fees and necessary expenses in securing the patents. Block further stated that he would build the model and furnish all of his secret experiments and information, but that appellant would have to see to the financing or commercializing thereof, as he was too sick to attend to such details.

Thereupon appellant accepted Block's verbal offer and pursuant thereto paid to Block on the following dates the respective amounts set forth:

| | |
|---|---|
| September 20, 1938, | $2500. |
| October 10, 1938, | 1000. |
| January 31, 1939, | 1200. |
| February 21, 1939, | 300. |
| | $5000. |

On February 14, 1939, Block had not yet taken steps to secure the patent relating to the gas, and expressed to appellant a desire that he furnish a contract that would authorize appellant to carry on negotiations, and for financing and commercialization purposes as soon as the protection of the patent applications was completed. Appellant had an attorney prepare a contract which was not satisfactory to either Block or appellant, and on March 11, 1939, Block submitted a contract which both signed, as follows:

"For and in consideration of the sum of five thousand dollars in hand paid, receipt of which is hereby acknowledged, I, D. Julian Block, hereby grant to Don W. Price of 4840 Kenmore Avenue, Chicago, Illinois, the exclusive option for one year on a process for generating a propulsive gas from water, said process now being in its experimental states.

"It is further agreed between the signatories hereto that any and all profits arising from the mutually satisfactory commercialization of this process, or further developments thereof, by Mr. Price shall be shared equally and divided between the said Don W. Price and D. Julian Block.

"This document is submitted in duplicate and acceptance hereof will constitute a full and sufficient agreement between the parties hereto, and shall be binding upon the heirs or assigns of both signatories.

"D. Julian Block.
"Accepted by Don W. Price."

When decedent received the patent upon his decaffeinizer he sent the letters patent to appellant for the purpose of having him proceed with financing the disclosure.

Block died on April 8, 1939, and left as his only heirs at law his widow, Tessie

Block and three sons, William, Richard and Herbert.

The bill further alleges that after the death of Block, appellees or some of them placed with the Probate Court of Cook County, Illinois, two purported wills of decedent, but neither has been probated. No executor or administrator has been appointed or qualified; no inventory of the assets of the estate has been filed; and appellees are in possession and control of all the assets of decedent, including all property relating to patent rights, the generating model of the hydrogen gas and its disclosures, and decedent's records, formulas and data relating thereto. Appellees deny, so the bill alleges, that there are now or ever were any such items and properties, and deny that there ever was any such joint adventure existing between decedent and appellant relating to the synthetic sugar or the coffee processing.

Upon these allegations appellant asks the following relief in addition to general equitable relief:

1. That a trust be impressed in favor of appellant and the Block estate upon all property left by decedent which in any manner relates to, or reveals any information concerning, or is useful in producing the synthetic sugar, or the hydrogen gas, or the decaffeinized coffee, or the antiseptic solution, and that such property be decreed to be the property of decedent's estate.

2. That defendants be required to account for all assets of the estate and to execute and deliver such instruments of conveyance or assignments to appellant which this court may find him entitled to under the allegations of the complaint.

3. That defendants be enjoined from disposing of any of the assets of the estate until final hearing.

4. That appellant be decreed to be a joint adventurer with Block in the making, development, control and commercialization of the four products, as well as in the processes, and the existing and contemplated patents.

5. That defendants as trustees be ordered to aid and assist appellant in making proper application for patents, and in protecting them, and in generating and controlling the hydrogen gas.

6. That said patents be decreed to be the property of appellant and the Block estate in equal proportions.

The record does not disclose who are the defendants, but the title endorsement on the front page of the record discloses that William and his mother are the only defendants, and they are the only appellees. However, appellees' attorneys appeared for all of the heirs in the District Court. The appellees jointly filed a motion to dismiss the third amended complaint which the District Court sustained, and dismissed it for want of equity. From that ruling this appeal is prosecuted.

Appellees' motion to dismiss admitted only the facts well pleaded in the complaint, and the reasonable inferences to be drawn from them. Weeks v. Denver Tramway Corporation, 10 Cir., 108 F.2d 509. The complaint is very lengthy and we have excerpted for consideration what we regard as the material allegations. It may be conceded, however, that appellant in his complaint specifically and with great prolixity alleged as facts that he was entitled to recover on each demand of its prayer.

It seems clear to us that appellant's rights and the estate's liabilities, with respect to the hydrogen gas process, must be based upon the written contract entered into on March 11, 1939. All prior oral negotiations, as set forth in the bill, must be considered as merged in the written contract. Grubb v. Milan, 249 Ill. 456, 94 N.E. 927; Graham v. Sadlier, 165 Ill. 95, 46 N.E. 221. Nothing pleaded could be considered as a proper basis for their admission to vary the terms of the written contract. Moreover, if such prior oral negotiations respecting financing and commercialization were to be considered not only with respect to the gas processes but also the other processes or patents, such agreements would be void and unenforceable on account of uncertainty, lack of mutuality, want of or failure of consideration, expiration by lapse of time, appellant's failure to perform, or because they were terminable at Block's will.

With respect to the decaffeinization and antiseptic processes or patents it is not disclosed that any contract was made between appellant and Block, and much more can not be said concerning the synthetic sugar process or patent. Block

made a very indefinite proposal to appellant with respect to the latter. It was not accepted, but was met with appellant's counter-proposal to accept, provided Block would first give a successful demonstration. This was agreed upon for a certain date, but it was never given because at that time Block was very busy with his gas process in which he, at that time, interested appellant to such an extent that he entered into negotiations with Block concerning it which afterwards culminated in the written contract of March 11, 1939. There is nothing alleged in the bill to indicate that appellant objected to delaying the sugar demonstration, and there was no meeting of minds on the subject matter and could not be until a successful demonstration had been given. There was no performance of any part of any oral agreement and there was no consideration moving from either party to the other. There was no contract with respect to the synthetic sugar patent or process.

■ The written contract merely grants an exclusive option for one year upon a gas generating process which was in its experimental state, and also one-half of the profits arising from the mutually satisfactory commercialization of that process.

The contract alone, or if considered in conjunction with the other oral agreements relative to its subject matter, does not create a joint adventure, or partnership contract, so as to vest in appellant any right of title to either the processes or patents. Clark v. Muir, 298 Ill. 548, 132 N.E. 193; MacDonald v. Dexter, 234 Ill. 517, 85 N.E. 209; Mueller v. Smith, 173 Ill.App. 45.

We think they are more properly designated as personal service contracts, and so far as performance is concerned they were at an end when Block died. Oliver v. Rumford Chemical Works, 109 U.S. 75, 3 S.Ct. 61, 27 L.Ed. 862; Emerich Co. v. Siegel, Cooper & Co., 237 Ill. 610, 86 N.E. 1104, 20 L.R.A.,N.S., 1114; Smith v. Estate of Preston, 170 Ill. 179, 48 N.E. 688.

■ The complaint further alleges that the defendants have taken physical possession of decedent's entire estate, including the property relative to Block's processes and patents as above referred to, and refuse to deliver the latter property to appellant, or to account therefor, and that they deny the existence of such properties, or that they wrongfully took or possessed them.

From the disclosures of the complaint it is clear that no constructive trust arose to which the appellees were subjected, nor are they in privity with this action by contract or otherwise. Appellees are neither the contracting parties, nor do they hold or claim to hold any interest therein which they could convey or transfer. See Doyle v. Murphy, 22 Ill. 502, 74 Am. Dec. 165; Delfosse v. Delfosse, 287 Ill. 251, 122 N.E. 484; Housewright v. Steinke, 326 Ill. 398, 158 N.E. 138. Whatever Block owned at the time of his death must have passed, by operation of law, to his personal representative under the control and jurisdiction of the Probate Court of Cook County. Such representative, who is not a party to this proceeding, is the only person in privity with this action. If there was a will, as the bill alleges there was, the property would be distributed in accordance with it. We are not informed as to its contents, or its devisees, or its legatees, and the allegations of the bill are far insufficient to authorize us to ignore the probability of a will.

■ However, appellant, in defense of his right to maintain his action, relies upon Chapter 59, section 15 of the Revised Statutes of Illinois: "If no person shall administer on the goods and chattels of a deceased person for the space of one year after his death, a separate suit or action may be maintained against the heirs or devisees, on all the contracts and undertakings of such deceased person." We think this statute does not confer jurisdiction upon the District Court. Moreover, the facts pleaded do not disclose that one year elapsed between Block's death and the date of suit, which was on March 4, 1940, or that he left goods and chattels subject to administration, or that appellees had inherited or had been devised any of his property, or that appellant had exhausted his remedies against the estate. See Rebhan v. Mueller, 114 Ill. 343, 2 N.E. 75, 55 Am.Rep. 869; Van Vuren v. Longstreet, 108 Ill.App. 159; Tinker v. Babcock, 107 Ill.App. 78.

■ We are convinced that the Probate Court, and not a court of chancery, was vested with primary jurisdiction of this action. If no administration was pending, appellant under a proper proceeding, could have instituted such adminis-

tration, under which he would have had an adequate remedy, by reducing his claim to allowance and exhausting his relief. He there could have had an adequate remedy at law for the restoration of any misappropriated property, or by summary reclamation under Sections 183–187 of the Probate Act of Illinois (Chap. 3, §§ 335–339, Ill.R.S.1939), or by suit in replevin or wrongful conversion. See Strauss v. Phillips, 189 Ill. 9, 59 N.E. 560; Goodman v. Kopperl, 169 Ill. 136, 48 N.E. 172; London & L. Indemnity Co. v. Tindall, 307 Ill.App. 45, 29 N.E.2d 941.

 The District Court was bound by the laws of Illinois, and it possessed no greater chancery powers to supersede the jurisdiction of the Probate Court over this cause than those of the several state chancery courts. 28 U.S.C.A. § 725; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; London & L. Indemnity Co. v. Tindall, supra.

Decree affirmed.