THE STATE *ex. rel.* POLK COUNTY, *Appellant,* v. WEST.

1. UPON an examination of the evidence, the court affirms the judgment of the court below, holding that the weight of evidence is against the appellant.

2. **Laches.** The testator of defendants having bought certain land in his own name at a sale made by order of the county court on the 23rd day of April, 1873, to satisfy a school mortgage, on the 20th day of September, 1873, sold it at an advance, and, on the 2nd day of January, 1874, died. The county court knew of the purchase by the deceased soon after it was made. On the 18th day of June, 1874, the county brought this suit to recover of defendants the profits made by deceased on the re-sale, claiming that he was acting as agent of the county. *Held,* that if the county ever had a cause of action it had been guilty of such laches as made it doubtful if this suit could be maintained.

HOUGH., J., dissented, holding that there was no laches.

*Appeal from Polk Circuit Court.*—HON. R. W. FYAN, Judge.

*D. P. Stratton* and *T. J. Rechow* for appellant.

*John D. Abbe* and *Waldo P. Johnson* for respondents.

SHERWOOD, C. J.—One James Miles owned certain land

in Polk county. He mortgaged the land to secure debts to the amount of about $3,000, due the school fund of the county. The county foreclosed its mortgages, and the land brought some $1,400, the deed of the sheriff being made to one J. B. Burros, now deceased, who, at the time of the sale, was clerk of the county court. Burros, in a short time, re-sold the land for $2,500.

The object sought in the present proceeding, an equitable one, is to recover from his legal representatives the amount of $1,200, alleged to have been fraudulently realized by Burros, by reason of the sale for the sum last mentioned, and by reason, also, that in the purchase made he was acting as the agent of the county and betrayed his trust by purchasing the land for himself, and by suppressing bidding. The cause was twice heard, once in the probate court and once in the circuit court, resulting in each instance in a judgment for defendants. There was no agency on the part of Burros, as to the Miles land shown by but one witness, Milliken, who only states in general terms that he and Burros had agreed, in the presence of Judge Murray, of the county court, to buy in the lands that would be sold under various mortgages, if they did not bring the debts; but Judge Murray, who recollected the conversation mentioned by Milliken, says that in that conversation Burros expressed a desire to buy in the Miles land for himself; asked the judge's advice, who told him that he would be safe to buy in the land for $1,400 or $1,500. There was other testimony showing that Burros acted as the agent of the county, in bidding other tracts of land for the county, but there was no testimony showing that Burros agreed to buy in the Miles land for the county, except the general statement of Milliken, and the equally inconclusive statements of Judge Barnett, another member of the county county, who "got that impression some way" that Burros was to bid in the Miles land for the county. But even Barnett admits that he knew then, that Burros desired to buy the land for himself. Under such circumstances, we

are disposed to place the greatest reliance upon the statement of Judge Murray, that as to the Miles land, Burros distinctly avowed his intention of bidding it in for himself. And the fact that he consented to act, and did act as the agent of the county in bidding in other lands, is by no means inconsistent with the idea of declining such agency in respect of the Miles tract.

It has been suggested by counsel that there was no agency in any event, because, under the ruling in *Ray County v. Bentley*, 49 Mo. 242, the county had no authority to purchase land at such sale, and, therefore, could delegate none. We do not take this view, nor are we influenced by such considerations, for the reason that whether the county could thus purchase or not is entirely immaterial, since, if a party assumes to act as an agent, it does not lie in his mouth to deny the validity of his appointment, and thus shelter himself from responsibility. But we base our conclusion as to Burros' alleged agency upon the vague and indeterminate nature of the testimony adduced in this regard, on the part of plaintiff, and the very satisfactory and definite evidence introduced on behalf of defendants. In relation to the charge that Burros suppressed bidding for the Miles land, we find no testimony in the record save that of Snodgrass, who had a judgment against Miles of $300, rendered subsequently to the mortgages to the county, and who says that he had an agreement with Burros not to bid on the Miles land, if the latter would pay off that judgment. Such an agreement was certainly not proper, but it was barren of results, as the land was bid in by Eidson at a much higher bid than any given by Burros, who afterwards bought Eidson's bid for $50 advance. The testimony clearly established that there was not the slighest collusion between Eidson, who was one of Miles' sureties, and Burros, but that Eidson was acting independently, and in his own behalf, in order to protect himself as well as his co-sureties. Besides, it does not appear that Snodgrass would have bid, or that the land would have brought more

at sheriff's sale than the amount bid by Eidson. Indeed, one witness, Watson, states that he quit bidding when he had run the land up to $900, as that was all he considered the land worth. This being the case, we cannot say that the county has been injured by the abortive agreement entered into between Burros and Snodgrass, because, in order to warrant a recovery or relief on the ground of fraud, it must be shown that injury has resulted therefrom; in other words, both fraud and injury must concur in order to recovery. In addition to that, as there was no collusion between Eidson and Burros in the purchase made by the former, it was just as competent for Burros to purchase from Eidson, as for any one else to do so, and this is especially the case, as we do not, as already stated, regard Burros as the county's agent in the purchase of the Miles land.

But granting that Burros was agent of the county; granting that he suppressed bidding; granting this resulted in injury to the county, still it is by no means clear that the present proceeding should be successful, and for this reason: A court of equity does not lend a helping hand but to the prompt and vigilant. Here the fact of Burros' purchase was known to the county court, within a short time after it occurred, and yet no complaint was made or suit instituted until months afterwards, when Burros' lips were sealed in death. Under such circumstances, the laches must, of itself, be held fatal, for it would be to assert a doctrine to the last degree hazardous, to say that a complainant with full knowledge of all the facts on which he relies, can lie quietly by until death comes to his assistance and puts the seal of perpetual silence upon the lips of his adversary.

Again, this cause has been twice heard in the lower courts; courts well acquainted no doubt with the witnesses and with what weight should be accorded to their testimony. We should, therefore, defer somewhat to their conclusions, and refuse to interfere unless in a case which indicates far more plainly than the present, that erroneous

conclusions have been reached. Judgment affirmed. All concur.

AFFIRMED.

HOUGH, J.—I concur in affirming the judgment on the ground that it does not sufficiently appear from the evidence that Burros ever undertook to act as the agent of the county in the purchase of the land in question. Nor does it appear that the county was in any way injured by the agreement between Burros and Snodgrass about bidding for the Miles land. To apply, however, the doctrine of laches to a case like this is going far beyond any decision ever made in England or America, of which I have any knowledge. It is tantamount to denying equitable relief to any person who originally demands it from the heirs or legal representatives of a dead man. I fail to find any evidence in the record tending to show that the county court waited for Burros to die before instituting this suit. Burros bought the land on the 23rd day of April, 1873. The sale by which he was charged to have fraudulently realized the sum of $1,200, was made by him to Mary Butcher on the 20th day of September, 1873. He died on the 2nd day of January, 1874, and this suit was instituted on the 18th day of June, 1874, long before the period fixed by the statute of limitations for instituting such suits had elapsed. It is a strange rule of equity which converts the death of one liable to a civil action, into laches on the part of his legal adversary. The providence of God accuseth no man.