## DEXTER v. MACDONALD et al., Appellants.

### Division Two, May 22, 1906.

1. **WRITTEN CONTRACTS.** It is fundamental that, when an undertaking by parties is reduced to writing, it is conclusively presumed, in the absence of fraud, accident or mistake, that the whole engagement and manner and extent of their undertaking are found in the instrument.

2. ————: **Express Trust: Agreement to Share in Profits.** Deceased signed this writing: "I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land (when sold), being the same land this day bought by me from Eugene Latinette in St. Clair county, Illinois." *Held,* that this paper did not create an express trust in Dexter to one-half the land not sold in the lifetime of deceased, after the original purchase price and all expenses were paid, but was at most an agreement requiring a division of the net profits after the sale of the land. That writing will not support a decree vesting in Dexter the title to one-half of the unsold lands.

3. **LACHES: Death of Other Party.** Equity views with disfavor a suit brought after the death of the party whose estate is sought to be affected, where such suit might have been brought during the lifetime of the party acquainted with the whole transaction, and no reason or excuse is alleged or shown why it was delayed until after his death.

4. ————: ————: **Agreement to Share in Profits of Land Deal.** Deceased in 1890 bought and paid for a tract of land, took the title in his own name, and in writing agreed to allow plaintiff one-half the profits of the sale thereof when sold, and shortly thereafter sold a part, out of the money received paid himself the original cost, and gave the plaintiff one-half the balance. Thereafter he paid the taxes and all other expenses, sold other tracts, but made no other division of the profits, and plaintiff, although cognizant of all the facts, prior to the death of de-

ceased in 1900 made no complaint or demand for an interest in the profits or in the lands, and brought this suit against the heirs in 1902. In his petition he alleges no excuse for the delay in asserting his claim, and no showing was made on the point. *Held*, first, that the remaining unsold lots are to be treated as personal property and clear profit; *second*, plaintiff's interest therein was fully determined and known in 1890 as soon as the money was received from the sale of the lots first sold, when deceased paid himself the original cost and divided the surplus with plaintiff, and his action would have been just as appropriate then, and more so, than it was twelve years afterwards when the other party was dead; *third*, plaintiff, because of laches, cannot recover on any theory.

5. ————: Not Pleaded: Available on Appeal. It is not necessary always that the defense of laches be specially pleaded in order to be a defense in an equity proceeding. Courts of equity either grant or deny the relief sought upon the proof introduced; and where plaintiff's proof is insufficient to authorize the relief sought, or any relief, it will be denied, whether or not laches were pleaded or suggested to the trial court, and although judgment was for plaintiff it will be reversed on appeal.

6. ————: ————: Limitations. The defense of the Statute of Limitations is at least an indication that there was delay in bringing the suit, and furnishes plaintiff with a sufficient suggestion of the necessity of offering, if he has any, an excuse for waiting for nearly twelve years and until the death of the other party to bring the suit.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED.

*Hickman P. Rodgers* for appellants.

(1)   There was no consideration for MacDonald's promise to Dexter. A bill in equity does not lie to enforce the performance of a voluntary promise of a gift. Brevator v. Creech, 186 Mo. 558. The option from Latinette to Allen had expired prior to the purchase by MacDonald and MacDonald purchased directly from Latinette with his own money, taking title in his own name, as he had a right to do. An expired option

can supply no part of a consideration.    Plumb v. Cooper, 121 Mo. 675.    (2) · The language employed in the writing under which plaintiff claims is not sufficient to create an express trust.    Perry on Trusts, section 24; Heil v. Heil, 184 Mo. 665.    It does not manifest that MacDonald intended to be charged as trustee—a fatal defect.    2 Story's Equity Jur. (1886), note 2, pp. 29-30; Woodford v. Stephens, 51 Mo. 443.    (3) The use of the words "net profits" in said writing, in the absence of any direct reference to an interest in the land, excludes any inference of such interest in the land.    Plumb v. Cooper, 121 Mo. 668; Morrill v. Colehour, 82 Ill. 618.    One may have an interest in the profits arising out of a thing without being a part owner in the thing.    Wiggins v. Graham, 51 Mo. 17.    (4) At the trial of the cause plaintiff stood on the proposition that MacDonald, deceased, was trustee under an express trust in favor of plaintiff, and the trial court so found; therefore, he must recover, if at all, on the theory of an express trust created by said writing; hence the court erred in admitting parol evidence.    Heil v. Heil, 184 Mo. 665.    (5) Courts of equity abhor stale claims and do not willingly enforce them. Watkins v. Donnelly, 88 Mo. 322; Davis v. Petty, 147 Mo. 374.

*Benj. J. Klene, Clinton A. Welsh* and *Brownrigg & Mason* for respondent.

(1) At the time of the conveyance under which MacDonald acquired title to the land, the option from Latinette, which belonged to Dexter, was still in force. In pursuance thereof, the title was transferred to MacDonald.    This is the consideration which, on Dexter's part, supports the agreement whereby Dexter and MacDonald were each to have a one-half interest in the land. Plumb v. Cooper, 121 Mo. 675.    (2)  (a) It appears for the record that the land in controversy is in the

State of Illinois. Defendants did not offer in evidence any statute of that State requiring declarations of trust with reference to lands to be in writing. The courts of this State do not take judicial notice of the statutes of Illinois, but presume that the common law is there in force. McPike v. McPike, 111 Mo. 226; Houghtaling v. Ball, 19 Mo. 84. (b) At common law, trusts in lands, or any other contracts with reference thereto, may be established by parol. Bispham, Equity Jurisprudence (6 Ed.), p. 99; 28 Am. Eng. Ency. Law (2 Ed.), 869; 4 Wigmore on Evidence, sec. 2454. (c) Contracts and transactions concerning land are governed by the law of the place where the land lies. Richardson v. DeGiverville, 107 Mo. 433; Depus v. Mayo, 11 Mo. 319. (3) Defendants, not having specifically raised the defense of the Statute of Frauds, cannot insist upon it here. R. S. 1899, sec. 864; Newverth v. Ingler, 83 Mo. App. 423; Royal Remedy Co. v. Gregory Grocer Co., 90 Mo. App. 57; Miller v. Harper, 63 Mo. App. 296; Vanidour v. Nelson, 60 Mo. App. 526; Scharff v. Klein, 29 Mo. App. 551; Condit v. Maxwell, 142 Mo. 276; Yoeman v. Mueller, 33 Mo. App. 347; Young & Branson v. Ledford, 99 Mo. App. 568; Steel v. Johnson, 96 Mo. App. 147. (4) There has been in this case such a performance as takes the agreement out of the Statute of Frauds. Hall v. Harris, 145 Mo. 615; Swon v. Stevens, 143 Mo. 384; Nowack v. Berger, 133 Mo. 24; Bless v. Jenkins, 129 Mo. 647; McConnell v. Brayner, 63 Mo. 461; Dickerson v. Chrissman, 28 Mo. 134; Farrar v. Patton, 20 Mo. 82. (5) The property in controversy was not bought to be held permanently as land, but to be used for the purposes of speculation for their joint benefit; therefore, it will be treated by a court of equity as personal property, and agreements with reference thereto by the parties to the joint venture are not within the Statute of Frauds. Morrill v. Colehour, 82 Ill. 618; Roby v. Colehour, 135 Ill. 300; Boone v. Clark, 129 Ill. 466; Van Housen v. Copeland, 180 Ill. 74; Ten-

ney v. Simpson, 37 Kas. 363. (6) But the language
employed in the writing is sufficient as a manifestation
and proof of an express trust to satisfy the Statute of
Frauds. Perry on Trusts (4 Ed.), sec. 82; Lane v.
Ewing, 31 Mo. 75; Cornelius v. Smith, 55 Mo. 533; Hall
v. Bank, 145 Mo. 418; Montague v. Hays, 10 Gray (76
Mass.) 609; Fisher v. Field (N. Y.), 10 Johns. 494;
Hutchins v. Van Vetchen, 140 N. Y. 115; Denton v.
McKenzie, 1 Dessaux (S. C. Ch.) 289; Reed v. Reed,
12 Rich. Eq. (S. C. Ch.) 213; Pratt v. Ayer (Wis.),
3 Chand. 265; Tenny v. Simpson, 37 Kas. 579; McLel-
land v. McLelland, 65 Me. 500; McCubin v. Cromwell's
Exr., 7 Gillian 157; Brown's Admr. v. Combs, 29 N. J.
37; Barrell v. Joy, 16 Mass. 221; Lynch v. Rooney, 112
Cal. 279; Moore v. Pickett, 62 Ill. 160; Freer v. Lake,
115 Ill. 662; Urann v. Coates, 109 Mass. 581; Jones v.
Davis, 48 N. J. Eq. 493; McArthur v. Gordon, 126 N. Y.
597; Maxwell v. Barringer, 110 N. C. 76; Roberts' Ap-
peal, 92 Pa. St. 422; Packard v. Putnam, 57 N. H. 43;
McCandless v. Warner, 26 W. Va. 754; Tichenvell v.
Jackson, 26 W. Va. 460; Bride v. Paulk, 42 Me. 514;
Blake v. Collins, 69 Me. 157; Morrill v. Colehour, 82 Ill.
618; Seymour v. Freer, 8 Wall. 202; Schaeffer v. Blair,
149 U. S. 248; Dale v. Hamilton, 2 Phill. (22 Eng. Ch.
Cond.) 266. (7) Even if, under the agreement be-
tween plaintiff and MacDonald, plaintiff be construed
as having an interest in the net profits only and not
in the land, a court of equity will compel the sale of the
land and a division of the profits. Morrill v. Colehour,
82 Ill. 618. But in cases similar to the one at bar, where
the memorandum called only for an interest in the pro-
fits, a division in kind has been ordered by a court
of equity. Tenney v. Simpson, 37 Kas. 579; Seymour
v. Freer, 8 Wall. 202. (8) There being written evi-
dence that MacDonald did not own the entire beneficial
interest in the property, this was sufficient to open the
door for parol evidence to explain the position of the
parties and circumstances under which the writing was

executed by MacDonald. 1 Perry on Trusts (Ed. 1889), sec. 82. (9) Defendants merely pleaded in general terms that the cause of action was barred by the Statute of Limitations. This is insufficient to enable them to rely on the statute as a defense. Murphy v. DeFrance, 105 Mo. 62; Hunter v. Hunter, 50 Mo. 452. However, the facts did not warrant such a plea. (10) (a) Defendants, in the court below, made no defense to the effect that the claim of plaintiff is stale or that plaintiff has been guilty of laches and, therefore, cannot make such defense here. R. S. 1899, sec. 864; Randolph v. Knox Co., 114 Mo. 142; St. Louis Brokerage Co. v. Bagnell, 76 Mo. 554; Schickle v. Watts, 94 Mo. 410. (b) Lapse of time is no bar to an express, open and continuing trust. Keeton v. Keeton, 20 Mo. 530; Ruby v. Barnett, 12 Mo. 3; Dillion's Admr's v. Base, 39 Mo. 292; Poe v. Dominick, 54 Mo. 127; Goodwin v. Goodwin, 69 Mo. 617.

*Hickman P. Rodgers* for appellants in reply.

Of and concerning the cases cited in respondent's brief to the effect that laches must be pleaded, appellants beg leave to show the court that Randolph v. Knox Co., 114 Mo. 142, and St. L. Brokerage Co. v. Bagnell, 76 Mo. 554, in no manner tend to sustain the point, and have no application to this, an equity case; and that Schickle v. Watts, 94 Mo. 410, was expressly overruled in Humphreys v. Atlantic Milling Co., 98 Mo. 552. Sheridan v. Nation, 159 Mo. 27.

FOX, J.—This cause is brought here by appeal from a decree and judgment of the St. Louis City Circuit Court. It is unnecessary to reproduce the pleadings upon which this judgment rests; it will suffice to say that this a proceeding in equity to compel the heirs of Robert S. MacDonald, deceased, to convey to plaintiff an undivided one-half interest in 172 lots of

vacant ground in "MacDonald's East Clairmont Addition," in St. Clair county, Illinois, and which addition is a suburb of the city of East St. Louis; and this relief is prayed on the ground that said MacDonald, in his lifetime, held title to said real estate as trustee for himself and plaintiff under an express trust, created by an instrument of writing alleged to have been executed by said deceased, and which is in the following language, viz:

"St. Louis, April 3, 1890.
"LAW OFFICE OF R. S. MACDONALD.
No. 721 Pine Street.

"I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land (when sold), being the same land this day bought by me from Eugene Latinette in St. Clair County, Illinois.

"R. S. MacDonald."

The facts developed upon the trial of this cause may be briefly stated as follows:

On the 19th day of March, 1890, there was a contract of purchase of this land entered into in the name of one George Allen for the purchase of the land in controversy, with one George Locke, respresenting Eugene Latinette, who was then the owner of the land. The purchase price agreed upon in this contract was three thousand dollars. Plaintiff in this proceeding, in the negotiation of this contract paid one hundred dollars earnest money. The contract of purchase of March 19, 1890, was introduced in evidence, by the terms of which one Eugene Latinette, then owner of said forty acres of ground, agreed to sell same to one George Allen, for the sum of three thousand dollars cash, deal to be closed within thirty days from date of same, and acknowledged receipt of the sum of one hundred dollars on account of said purchase price. This paper was signed "Eugene Latinette, by Geo. W. Locke, Agt.," and "George Allen, by Chas. Dexter." George W. Locke, who represented Latinette in this deal, testified that the

property was subsequently purchased under the contract of March 19, 1890. It appears from Locke's testimony that about the time this contract was about to expire he went with Dexter to the office of R. S. MacDonald. He says that MacDonald and Dexter had some conversation and that Dexter handed him (Locke) in money three thousand dollars, or twenty-nine hundred dollars, witness did not remember which, and that witness handed the deed to said property to Dexter at the time. The witness was not positive as the form of the deed; could not remember whether the grantee's name was written in the deed at or before delivery. This witness on cross-examination first stated that the $2,900 or $3,000 paid at that time was in cash and in greenbacks and that when he first saw the money it was in Mr. Dexter's hand, though he did not see him get it out of his pocket, and swore rather positively that payment was not made with check. However, subsequently MacDonald's check in the sum of $2,900 dated April 23, 1890, payable to Latinette, was shown witness, and he identified the payee's endorsement thereon. This witness after having his memory refreshed stated that MacDonald used to speak to him about "our property over the river," and when speaking of the property in that way the plaintiff, Dexter, was present. Plaintiff introduced in evidence, over the objection of the defendants, the following assignment of all claims to the lands in controversy, from Charles Dexter to Wyllian K. Dexter:

"Received of Wyllian K. Dexter on the within contract as per dates and amounts below:

"Date        Amount        Date        Amount.

"May 1, 1899, $3,000.00, owing out of the mortgage of Minneapolis, Aug. 12, 1892. Valuable consideration.

"In consideration of the above advancement of money I hereby assign all my right to a certain forty-acre tract of land as well as the profits arising from the

sales situated in St. Clair county, State of Illinois, known as the 'Latinette forty' bought by me of Eugene Latinette, March 19, 1890, in the name of George Allen and deeded in trust to Robert MacDonald, of St. Louis, Mo., to be sold for our mutual benefit; this includes profits as well as titles, said land being platted and called 'MacDonald's East Claremont,' reference being had for a more particular description to the deed from Eugene Latinette to Robert MacDonald, dated 23rd April, 1890, together with the map or plat of the addition, both being on file in the office of the recorder of deeds of St. Clair county, State of Illinois.

"CHARLES DEXTER."

Also the following re-assignment from Wyllian K. Dexter to Charles Dexter:

"St. Louis, Mo., April 23, 1892.

"Whereas on April 23rd, 1890, the following contract was made between Robert S. MacDonald, of St. Louis, Mo., and Charles Dexter of said city, viz:

" 'St. Louis, Mo., April 23, 1892.

" 'I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land (when sold) being the same land this day bought by me from Eugene Latinette in St. Clair county, Illinois.

" 'ROBERT S. MACDONALD.'

"And whereas, all title and interest in said contract was conveyed to Wyllian K. Dexter, wife of Charles Dexter, on Aug. 1, 1892, and filed for record in the office of the recorder of deeds for St. Clair county, January 27, 1902, I do hereby in consideration of one dollar and other valuable consideration make a conveyance of all my right, title and interest in said contract made between MacDonald, and Dexter to said Charles Dexter. "WYLLIAN K. DEXTER."

It is disclosed by the record that Wyllian K. Dexter, wife of plaintiff herein, presented a claim against the estate of Robert S. MacDonald, deceased, in the

probate court in the city of St. Louis based on the assignment of her husband's claim as herein indicated. Before a decision was reached in that case the claim was withdrawn. Witness French R. Session, as it is disclosed from the record, had testified in the suit pending in the probate court between Mrs. Dexter and the estate of R. S. MacDonald. His testimony was preserved and by stipulation between counsel in this cause it was introduced on the part of the plaintiff subject to all objections as to its relevancy and competency. The substance of his testimony may be briefly stated as follows: He stated that the property mentioned in the paper of date of April 23, 1890, under which plaintiff claims, was afterwards platted and came to be known as ''MacDonald's East Clairmont Addition'' and was outside of the city limits of East St. Louis, about 2,000 or 3,000 feet from the city limits; and further testified in substance as follows: ''subsequent to the date of this paper I had connection with this property and sold somewhere between 2,200 and 2,500 feet of it to parties in Jacksonville, Illinois. Most of my dealings were with Mr. MacDonald. The deal was closed in Mr. MacDonald's office at Eighth and Pine streets. My recollection is that the price was $4 per foot. It was after the date of this memorandum that I sold the property, that is, after 1890. There were present on the occasion referred to, when the deal was closed, Mr. MacDonald, Mr. Dexter, Mr. Leonard Chambers, of Jacksonville, and myself. I had the selling of this property. Leonard Chambers or Gov. Richard Yates, one or the other, I don't remember which, was the grantee in the deed. My recollection was that MacDonald took $3,000 and that the balance was divided between him and Dexter, after my commission was paid. I was present when that was done. My commission was five per cent. MacDonald received the whole thing—all the money; then I got my commission, and the balance was divided. My recollection is that the deed stated the correct consider-

ation. I am not positive—don't remember that far back. On the day this sale was made, Mr. MacDonald made the remark to me that if I could sell some more that way he and Dexter would get out of the thing with a good profit; something to that effect.'' The plaintiff and Sessions, according to the latter's testimony, were operating considerably in East St. Louis real estate at that time, and were frequently together. Witness Sessions further stated that after he had made the sale to Chambers he heard R. S. MacDonald say that Dexter had not paid the taxes up and that he was not going to sell and that if he did not sell he did not have to make a division with Dexter, and that he was going to hold the property.

Plaintiff offered in evidence the warranty deed to the property in controversy, executed by Eugene Latinette and his wife, dated the 23rd day of April, A. D. 1890, and acknowledged on the 25th day of April, 1890; also a warranty deed from Robert S. MacDonald of the city of St. Louis to Leonard W. Chambers of Jacksonville, Illinois, conveying lots Nos. 1, 8 and 9 in MacDonald's "East Clairmont," St. Clair county, State of Illinois, for consideration of $11,150, and duly executed on December 21, 1890. Plaintiff also offered in evidence certified copy of warranty deed, wherein Robert S. MacDonald of the city of St. Louis, Missouri, for consideration of $1,000, conveyed to George T. Jarvis, as receiver of the Louisville, Evansville & St. Louis Consolidated Railroad Company, all of lots numbered from 20 to 38 inclusive, in block No. 10, all of Block No. 11 and 12 of MacDonald's "East Clairmont," St. Clair county, Illinois. This deed was duly executed March 14, 1899. There was also offered in evidence by plaintiff, quitclaim deed from the said Robert S. MacDonald, widower, to the said Jarvis, receiver, for the consideration of $1 and alluding to streets in MacDonald's "East Clairmont."

The evidence disclosed by the record also tends

to show that on the 17th day of April, 1890, MacDonald gave to Charles Dexter a check in the sum of $100, on which Dexter received the money; and on April 23rd, four days after the expiration of said option, MacDonald gave Eugene Latinette a check in the sum of $2,900, and on which Latinette received the money; and the deed by which MacDonald acquired title to the property was dated and executed on that day. This deed is a warranty deed in the usual Illinois form, Eugene Latinette and wife being the grantors and Robert S. MacDonald being the sole grantee, and duly acknowledged and filed for record in St. Clair county, Illinois, on the 25th day of April, 1890. MacDonald during the remaining ten years of his life paid out of his own money every dollar of tax and expenses connected with the property and there is no evidence that Charles Dexter or Wyllian K. Dexter ever paid or contributed one cent on account of same. MacDonald maintained both home and office in the city of St. Louis continuously from the time of the acquisition of this property until his death, but neither Charles Dexter nor Wyllian K. Dexter appeared in the matter subsequent to the sale to Chambers of a part of said property, and which sale occurred about ten years before MacDonald's death. After Mac-Donald's death said paper of April 23, 1890 (the so-called declaration of trust), was, on January 27, 1902, for the first time filed for record in the recorder's office.

At the close of the evidence the cause was submitted to the court and the following preliminary decree was rendered:

"Now at this day this cause having come on to be heard upon the petition, answer and reply, and the proofs taken herein, and having been argued by the counsel for the respective parties and the court having duly considered the same, doth find that Robert S. Mac-Donald, late a citizen of the city of St. Louis, departed this life in said city, a widower and intestate, on, to-wit, the 11th day of December, 1900; that the defendant,

Malcolm W. MacDonald and Robert S. MacDonald, Jr., were, by the probate court of the city of St. Louis, duly appointed administrators of the estate of said Robert S. MacDonald, deceased; that they duly qualified as such and are still acting in that capacity; that the defendants Malcolm W. MacDonald, Robert S. MacDonald, Jr., and Ellen Hunt MacDonald Jones, are all the surviving children and heirs of said Robert S. MacDonald, deceased; that Augustus B. Jones is the husband of said Ellen Hunt MacDonald Jones, and is sued herein in the right of his wife; that plaintiff and all the defendants reside in the city of St. Louis; that at or about the month of April, 1890, plaintiff and said Robert S. MacDonald, deceased, entered into an agreement for the purchase of a certain tract of land in St. Clair county, Illinois, described as follows: 'A tract of land in St. Clair county, State of Illinois, containing forty acres more or less, bounded on the northwest by land now or formerly owned by McCausland and Guignon; on the northeast by the Centerville road; on the southeast by the county road, and land now or formerly owned by Bevalot, and on the southwest by the Air Line railroad, said lands being parts of Surveys 127, 128 and 129, and being the same land which was acquired by Eugene Latinette by deed dated December 14, 1886, filed for record January 3, 1887, and recorded in Book 188, at page 396, in the office of the recorder of deeds of St. Clair county, Illinois;' that the said agreement between plaintiff and said Robert S. MacDonald, deceased, under which title to said land was acquired, was entered into under the following circumstances: Plaintiff had prior to the month of April, 1890, entered into a valid contract of purchase of same in the name of one George Allen, but in fact for his own account, at the price of three thousand dollars, paying at the time one hundred dollars in cash in part payment of said purchase price, which

money was afterwards repaid to plaintiff by said Mac-Donald, and said sale was to be closed and balance of the purchase money paid within thirty days after March 19, 1890, titles to be perfect and property to be conveyed by warranty deed; that after making said contract of purchase of said property upon the terms and within the time above set forth, plaintiff interested said MacDonald in the purchase of said property and induced him to furnish the purchase price of three thousand dollars, which said MacDonald did subsequently furnish; that it was thereupon mutually agreed between said MacDonald and plaintiff that the title to said property should be taken in the name of said MacDonald for the joint benefit of said parties, subject to the following terms and conditions: That said property should be platted and subdivided into blocks and lots, which was afterwards done, and the said subdivision was named, 'MacDonald's East Clairmont Addition;' that said property should be sold, and out of the first sales, said MacDonald was to receive back his advancements for purchase price, etc., with interest; that thereafter, and after the payment of said advancements and expenses with interest, the net proceeds should be equally divided between plaintiff and said MacDonald; that under date of April 23, 1890, said MacDonald, on his office stationery, in his own handwriting, signed, executed and delivered to plaintiff a memorandum in words and figures as follows, to-wit: 'I hereby agree to allow Chas. Dexter one-half of the net profits of the sale of the forty acres of land (when sold), being the same land this day bought by me from Eugene Latinette, in St. Clair county, Illinois.' That upon said 23rd day of April, 1890, Latinette and wife executed a deed in blank (as to grantee) and delivered the same through one Locke, their agent, to plaintiff, who paid over to them the $2,900 balance of the purchase money, by check of said MacDonald; that said MacDonald's name was there-

after written in deed as grantee and said deed was recorded in the recorder's office of St. Clair county, Illinois, in Book 206, at page 540, and conveys the same property hereinbefore described; that after said land was subdivided, and in the month of December, 1890, blocks one, eight, and nine of said subdivision were sold for the sum of $11,150, and said MacDonald was repaid his advancements up to that date and the balance was divided between said MacDonald and plaintiff to their mutual satisfaction, and this transaction must be treated as closed, and not open to further inquiry; that subsequently, as appears in evidence, in the month of March, 1899, said MacDonald sold and conveyed to George T. Jarvis, receiver, lots numbered 20 to 38 inclusive, of block 10; all of block 11 and all of block 12 of said subdivision and certain streets; that the remainder of said lots remain unsold; that plaintiff is entitled in equity to a half interest in the remaining or unsold lots, and that in and to any and all unaccounted for sales of lots, if any; that said MacDonald during his lifetime was trustee under an express trust for plaintiff for a one-half interest in said property, and that the same passed on his death, to defendants, subject to plaintiff's equitable title to a half interest in the same; that the facts herein found by the court create an express trust to the extent of a one-half interest in said lands in favor of plaintiff, and that until some disclaimer on the part of said MacDonald is brought home to plaintiff, the burden to prove which is on defendants, the Statute of Limitations cannot be invoked to defeat this action; and that no such disclaimer has been proven in the case.

"Wherefore, it is ordered, considered and adjudged by the court that plaintiff is entitled in equity to an undivided one-half interest in and to any and all unsold portions of the lands in said 'MacDonald's East Clairmont Addition,' and to a one-half net interest in any and all sums of money received by said MacDonald, or

defendant, from sales of portions of said property, if any, and not accounted for, if any, together with legal interest thereon from dates of receipt of such sums, not including the sale made in December, 1890. That the cause be referred to John A. Talty, Esq., as Referee, to take and state a mutual account of all the dealings and transactions between the plaintiff and defendants and said Robert S. MacDonald, deceased, except as herein otherwise provided; that the said referee in the taking of said account is to make unto the said parties all just allowances, and report to this court what balance shall be due from either party to the other, if any, including in said account the net proceeds of all sales of lots in said subdivision, not herein excluded, and crediting the defendants with any and all credits to which they may be entitled for expenses and advancements made on account of said property, and said referee shall report the number and description of any and all lots in said 'MacDonald's East Clairmont Addition,' remaining unsold. And all other matters are reserved until the report of the referee shall be made herein. Finding of facts filed.''

A timely motion was filed by appellants to set aside the preliminary decree and for new trial, which motion was by the court overruled.

The referee, Hon. John A. Talty, proceeded to hear the matter referred to him, heard testimony and on the 3rd day of July, 1903, said referee filed his report in said cause, in which he finds that there was $778.24 chargeable against whatever interest the plaintiff may have in said unsold portions of said real estate. Appellants filed their motions to set aside the referee's report as well as exceptions to it, which motion and exceptions were on the 17th day of July, 1903, by the court overruled. And afterwards, on the same day the court confirmed the said referee's report and made a final decree in favor of plaintiff, commanding defendants Malcolm W. MacDonald, Robert S. MacDonald Jr., and

Helen Hunt MacDonald Jones, to convey to plaintiff an undivided one-half interest in and to the real estate in controversy upon payment to them by the plaintiff of the sum of $778.24.

Appellants in due time filed their motion to set aside the final decree and for new trial, which motion was by the court overruled and from such final decree appellants in proper form prosecuted their appeal and the cause is now before us for consideration.

OPINION.

The record in this cause sharply presents for our consideration two propositions:

1. Did the paper writing signed and delivered by R. S. MacDonald to the plaintiff, create an express trust by which MacDonald was to hold the legal title to the land in controversy in trust for the plaintiff?

2. In view of the facts disclosed by the record of the long-continued silence of the plaintiff in assertain his claim to any interest in this land, allowing many years to elapse and the death of R. S. MacDonald, who held the legal title to the land in dispute, to occur, before making any such claim, was the chancellor in this purely equitable proceeding warranted in granting the relief indicated by the decree or any other relief?

The final decree in this cause recites: "That said MacDonald during his lifetime was trustee under an express trust for plaintiff for a one-half interest in all of said property; . . . that the facts herein found by the court create an express trust to the extent of a one-half interest in said unsold land in favor of plaintiff," which is followed by the concluding part of the decree, requiring the defendants to execute by a proper conveyance to plaintiff the undivided one-half interest in the unsold lots of land involved in this proceeding.

It is manifest if this decree can be supported upon the evidence as disclosed by the record that its main support must be found in the instrument of writing ex-

ecuted by R. S. MacDonald during his lifetime. While the parol testimony may tend to show some consideration for the execution of this instrument, it sheds no light upon the intention of the parties at the time of its execution or of the nature and purposes of the instrument. Hence, if R. S. MacDonald during his lifetime was trustee under an express trust for plaintiff for a one-half interest in all of this land as alleged in the decree, we must look to the terms of the instrument for ascertainment of the creation of such trust. It is therefore well to keep in mind the precise terms of this instrument, which is the foundation and corner stone upon which this decree must rest, and we here reproduce it. It was as follows:

"St. Louis, April 23, 1890.

"LAW OFFICE OF R. S. MACDONALD,

No. 721 Pine Street.

"I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land (when sold), being the same land this day bought by me from Eugene Latinette in St. Clair County, Illinois.

"R. S. MACDONALD."

Upon careful consideration of the disclosures of the record in this cause, as well as the able presentation of the questions by learned counsel for respondent, and from an analysis of the terms of the instrument executed by MacDonald, we are unable to give our assent to the contention that R. S. MacDonald during his lifetime was trustee under an express trust for plaintiff for a one-half interest in the lands described in the petition.

Mr. Perry in his standard work on Trusts, section 24, "defines express trusts as those generally created by instruments that point out directly and expressly the property, person and purposes of the trust. No special form of words is necessary to create an express trust. In a word, then, an express trust is one which defines and limits the uses and purposes to which certain property shall be devoted and defines the duties of

the trustee as to its control, management and disposition." [Heil v. Heil, 184 Mo. 1. c. 676.]

It is significant in this instrument that there is an entire absence of the employment of such terms as are ordinarily used in the creation of a trust, and in no part of this instrument is there any language employed which would indicate or from which it could be inferred that MacDonald intended to hold the land in trust for anybody. He paid every dollar of the purchase money for this land and accepted a warranty deed in which there were no conditions embraced. The plaintiff never contributed any part of the purchase money for the lands in dispute. This was a very plain and simple instrument. Mr. MacDonald said, "I hereby agree to allow Charles Dexter one-half of the net profits of the sale of the forty acres of land, when sold," and when he came to designate the land he emphasizes the fact that it was the same land, not bought by us, the plaintiff and defendants, but as he says, "being the same land this day bought by *me* from Eugene Latinette, situated in St. Clair county, Illinois." The terms of that instrument, in our opinion, makes it manifest that it was foreign to any idea or intention by R. S. MacDonald, in the execution of that instrument, or by the plaintiff in accepting it, of creating an express trust by which MacDonald as trustee was to hold the legal title for plaintiff for a one-half interest in said lands.

It is fundamental that when an undertaking by parties is reduced to writing, in the absence of fraud, accident or mistake, it is conclusively presumed that the whole engagement and manner and extent of their undertaking were reduced to writing. This was so ruled by this court in Plumb v. Cooper, 121 Mo. 668.

The creation of an express trust must be manifested or proven by a written instrument, and it is elementary that in the creation of a trust, whether in regard to real or personal property, the acts of the par-

ties in the creation of such trust must be done with that intent.

In Woodford v. Stephens, 51 Mo. 443, the wife sought in a court of equity to obtain a decree of title to certain lands which she alleged had been held in trust for her by her late husband. This court, in discussing the proposition involved in that case, said: "The declaration of the wife that this land was hers, is no sufficient evidence of a trust. If the money was his with which the land was entered, a trust in favor of his wife or any one else could only be manifested or proved by writing. Conceding that it might be created by parol, it must under the Statute of Frauds be manifested by writing. To create a trust, whether in regard to real or personal property, the act must be done with that intent, and must be manifested by clear and unequivocal evidence."

The case which nearest approaches the one at bar is Morrill v. Colehour, 82 Ill. 618. The rules of law announced in that case are directly in point and specially applicable to the case at bar, by reason of the similarity of the transactions. The legal title to the lands in dispute in the Illinois case was in W. H. Colehour. There was an agreement similar to the one in this case providing for the allowance to his associates in the transaction of one-half of the net profits arising from the sale of the land. The agreement in that case was stronger and designated the purposes of the agreement much more clearly and with more accuracy. It was urged in that proceeding, as it is in the present one, that W. H. Colehour occupied the relation of trustee, holding the title to the land as such trustee for his associates in the deal. The court, in discussing the agreement in that proceeding, thus stated the law which should govern it: "The written agreement executed by W. H. Colehour only binds him to pay appellant and the others equal portions of the one-half of the net profits arising from the sale of the lands. It in no event

bound him to convey the land, nor can we imagine any
state of facts that could arise under the agreement, that
would require a court of equity to compel him to con-
vey the land to them. Had he failed or refused to pro-
ceed to make the sales as was contemplated by the par-
ties, he could, no doubt, have been compelled to do so,
or another would have been appointed for the purpose,
by a decree of court. By this agreement, this was not
an interest in or title to the land, but it was an agree-
ment to give appellant, and to pay him, profits that
might be realized from the sale of the land. W. H.
Colehour held the legal title, the Clarks held the equit-
able title, or rather a lien on the land to secure the
purchase money, and appellant and his associates held
an agreement for one-half of the net profits arising
from the sale after discharging the $4,000 mortgage,
the purchase money, the expenses, taxes and paying
W. H. Colehour for his trouble. It was not in the con-
templation of any of the parties that W. H. Colehour
should ever convey a foot of this land to them or either
of them. The purchase was made for the purpose of
sale and the acquisition of profits. It was not bought
to hold as land, but simply as an article of commerce,
and for speculation, and for that reason equity regards
it as personal property among the partners. In such
cases the intention of the parties stamps the character
of the transaction. We are, for these reasons, of opin-
ion that this was not a contract for such an interest in
lands as to fall within the Statute of Frauds, and was
not, therefore, void, because it was not in writing.''

This case clearly and correctly announces the law
applicable to the facts as disclosed by the record in that
proceeding. In that case the court properly ruled that
the party executing the agreement could only be requir-
ed to do such acts as the terms of the agreement pro-
vided that he should do. This ruling is sound, as well
as logical, and in harmony with fundamental legal
principles, as well as a practical and common sense ap-

plication of them, and for that reason we are disposed to follow the rule as announced in that case and apply it to the case at bar, in which a very similar question is involved, which means that the agreement as executed by R. S. MacDonald at most must be treated as one requiring a division of net profits after the sale of the land and not one by which he held the title to the land as trustee under an express trust for plaintiff for a one-half interest in the land itself.

Our attention is directed by respondent to numerous cases in support of the decree rendered by the trial court. We are not unmindful of what those cases hold and they have had our most careful consideration, but it will suffice to say that an analysis of them demonstrates that the conclusions reached in those cases were based upon a state of facts in many respects essentially different from those disclosed by the record in this case, and they fall far short short of furnishing support to the decree rendered in this cause. In the case of Seymour v. Freer, 8 Wall. 202, which is relied upon by respondent as supporting the decree in this case, it will be observed in that case that the court proceeded upon entirely a different theory to that pursued in the case at bar. There the purchase money and all the taxes and expenses connected with the purchase of the land having been realized, the court regarded the remainder of the land as net proceeds and treated it as personal property, in other words, as money, and decreed a division of it between the parties. That is not this case. Here the court treats the property in dispute as real estate and enters a decree requiring the defendants to execute a conveyance in proper form for the undivided one-half interest in such real estate.

In Shaeffer v. Blair, 149 U. S. 248, another case relied upon by respondent, the facts are entirely unlike those disclosed by the record in this case. The agreement in that case clearly shows a joint interest in the property itself; hence it furnishes no support to the

contention of respondent as to the correctness of the decree rendered in this cause. To the same effect is Montague v. Hayes, 10 Gray 609. There it will be observed that the agreement recites that "we have purchased the estate of F. C. Head and T. Motley, on Washington street, which has, by mutual consent, been conveyed to me," which is strikingly unlike the agreement in the case before use, wherein Mr. MacDonald in speaking of this land emphasizes the fact that it was bought by him.

In Tenney v. Simpson, 37 Kan. 579, which is relied upon by respondent, the agreement expressly recites that "we purchased 10 acres of land" through certain land agents. It will also be noted in that case that the court treated the land in the same manner as personal property, and all debts and expenses having been paid, it regarded the remainder of the land as profits and ordered a partition of it between the parties. The rule in that case upon the record before the court by no means furnishes support to the decree rendered in this cause.

It is unnecessary to pursue this subject further. Entertaining the views as herein indicated, it must be held that the decree in this cause is manifestly erroneous and should not be permitted to stand.

II. This leads us to the consideration of the second proposition involved in this proceeding, that is, in view of the facts disclosed by the record of the long-continued silence of plaintiff in asserting his claim to any interest in this land, allowing many years to elapse and the death of R. S. MacDonald, who held the legal title to the land in dispute, to occur, before making any such claim, was the chancellor in this purely equitable proceeding warranted in granting the relief indicated by the decree or any other relief?

The correct and proper determination of this proposition necessitates a brief reference to the cause of

action as stated in the petition and the facts as developed at the trial of the cause. It appears upon the face of the petition that this land was conveyed by a warranty deed to Robert S. MacDonald in the year 1890, and it is alleged in the petition that the agreement between MacDonald and the plaintiff as to a division of the profits upon the sale of such land, was made at the same time. It is also alleged in the petition that on the —— day of ————, 189—, large portions of said property were sold to one Chambers for the sum of $8,000, and on or about the 14th day of March, 1899, other large portions of said property were sold to George T. Jarvis, receiver of the Louisville, Evansville & St. Louis Consolidated Railroad Company for $1,001, both of which said sums were paid to said MacDonald during his lifetime for the joint benefit of plaintiff and MacDonald. Then it is averred that neither said MacDonald nor defendants have ever accounted to plaintiff for the amount, nor for plaintiff's portion of said sales of said lands.

The facts developed at the trial in support of the allegations of the sale of lands by R. S. MacDonald to Chambers, show that that sale was made on December 31, 1890, only a few months after the land was deeded to R. S. MacDonald by Latinette. That the consideration for the land conveyed was $11,150, and plaintiff seeks to recover under the agreement alleged his part of the proceeds of that sale. However, it was developed at the trial by the plaintiff's own testimony, that at the time of said sale in 1890, MacDonald in accordance with the agreement as alleged by plaintiff in his petition, repaid himself the $3,000 of the purchase money for the land, paid the commission to the party making the sale and divided the remainder of the proceds with the plaintiff.

It is manifest upon the face of the petition that plaintiff had full knowledge of the sale of that portion of this land conveyed to Chambers in 1890, and that out

of the proceeds of that sale MacDonald repaid to himself the $3,000, the amount of purchase money paid for the entire land.

Proceeding upon the theory as urged by respondent in his brief and in harmony with Seymour v. Freer, Tenny v. Simpson, and Morrill v. Colehour, supra, and treating the remaining unsold lots of this land in controversy as being in the nature of personal property and clear net profits, we have  in this case, upon respondent's own  theory,  the clear net  profits fully determined and known since 1890, and yet there is an absolute silence on the part of the plaintiff in respect to any claim of such profits for a period of ten or eleven years; in fact this suit was not instituted until the 18th day of January, 1902.  It also appears upon the face of the petition, as well as from the facts developed at the trial, that R. S. MacDonald lived for about ten years after the sale of the land to Chambers, from which a sufficient amount was realized to pay the purchase money for the original conveyance from Latinette to MacDonald.  It will also be observed that the petition alleges that R. S. MacDonald died December 11, 1900, yet there is an entire absence of any allegation indicating why this proceeding was delayed for a period more than ten years and until the death of R. S. MacDonald had occurred.  It is clear, if respondent's theory is correct, that the remaining unsold lots are to be treated  in the nature of personal property and clear profit, that this profit and property was fully determined and known as soon as the money was received from the sale to Chambers, which was in 1890; hence this proceeding would have been just as appropriate, and much more so, upon the consummation of the sale from MacDonald to Chambers and the receipt of the money in 1890, during the lifetime of R. S. MacDonald, as it was ten years after that time, when the lips of MacDonald as to this entire transaction were sealed and he no longer able to give an account of the facts surrounding it.

The facts developed at the trial emphasize the delay in asserting the claim to this property which is demonstrated upon the face of the petition. The record in this cause disaloses that R. S. MacDonald resided in the city of St. Louis; was a practicing lawyer and maintained a law office in said city from 1890 up to the time of his death in 1900. He paid the entire consideration for this land and accepted a deed in his own name; placed it upon record; had the land surveyed, subdivided and platted and named it "McDonald's East Clairmont Addition;" the land was assessed to him and as long as he lived he paid all the taxes upon it; after his death it was inventoried as a part of his estate and the taxes paid out of the estate or by the defendants. During the ten years of his life, from the time of the consummation of the sale and the receipt of the money to Chambers in 1890 up to the time of his death in 1900, there is an entire absence in the disclosures of the record before us of any assertion on the part of this plaintiff of any claim to the lands in dispute. Within a comparatively short time after the death of R. S. MacDonald we find that the plaintiff then became active and for the first time filed the instrument executed by MacDonald, for record. The next step is an assignment of this claim to his wife, who, upon the basis of this assignment, instituted a suit in the probate court against the estate of R. S. MacDonald, and before that suit was determined it was withdrawn and she reassigned the claim to her husband, Charles Dexter, the plaintiff in this cause, and he on January 18, 1902, for the first time and after the death of his adversary, institutes this proceeding.

Confronted with this petition, which when carefully analyzed, clearly indicates an unseeming delay in the prosecution of this claim, as well as the facts, which, we repeat, simply emphasize the *laches* demonstrated upon the face of the petition, is the plaintiff entitled to the relief afforded him by the decree, or to any relief

whatever? We have carefully considered all the disclosures of the record before us and have reached the conclusion that he is not.

It is fundamental that equity views with disfavor suits that are brought after the death of the party whose estate is sought to be affected where such suit might have been brought during the lifetime of the party acquainted with the whole business, and no reason or excuse being alleged or proven why such suit is delayed until after the death of the adverse party. [Lenox v. Harrison, 88 Mo. 491; Burdett v. May, 100 Mo. 13; State ex rel. v. West, 68 Mo. 229.]

In State ex rel. v. West, supra, there was comparatively very little delay in the institution of the proceeding in that case, yet this court very properly expressed grave doubts as to the right of the county to recover, upon the sole ground that it failed to bring the suit prior to the death of the adverse party. J. B. Burros was county clerk of Polk county and while occupying that position the county court ordered the sale of the land in controversy and on the 23rd of April, 1873, the county clerk bought the land under such order of sale and took the deed in his own name. On the 20th day of September, 1873, he sold it at an advance on the price paid for it of $1,200, and on the 2nd day of January, 1874, the county clerk died. The county court knew of the purchase by the deceased soon after it was made. On the 18th of June, 1874, only a little over a year from the time the purchase was made by the county clerk, the county brought its suit to recover of defendants, who were the legal representatives of the deceased county clerk, the profits made by the deceased on the resale, claiming that the county clerk was acting as the agent of the county. This court, in discussing the delay in the institution of the suit in that case, which was slight as compared to the delay in the bringing of the suit in the case at bar, used this language: "But granting that Burros was agent of the county; granting that

he suppressed bidding; granting this resulted in injury to the county, still it is by no means clear that the present proceeding should be successful, and for this reason: A court of equity does not lend a helping hand but to the prompt and vigilant. Here the fact of Burros' purchase was known to the county court, within a short time after it occurred, and yet no complaint was made or suit instituted until months afterwards, when Burros' lips were sealed in death. Under such circumstances, the laches must, of itself, be held fatal, for it would be to assert a doctrine to the last degree hazardous, to say that a complainant, with full knowledge of all the facts on which he relies, can lie quietly by until death comes to his assistance and put the seal of perpetual silence upon the lips of his adversary."

In Smith v. Clay, Ambler 645 (3 Bro. C. C. 640), Lord CAMDEN said: "A court of equity, which is never active in relief against conscience, or public convenience, has always refused its aid to stale demands, when the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."

"Acquiescence or delay for a length of time after a man is in a situation to enforce a right, and with full knowledge of facts, is, in equity, a cogent evidence of a waiver and abandonment of the right. Lapse of time, when it does not operate as a positive or statutory bar, operates in equity as an evidence of asssent, acquiescence or waiver. The two propositions of bar by length of time, and bar by acquiescence, are not distinct propositions. They constitute but one proposition." [Kerr on Fraud and Mistake, pp. 299, 305.]

The law upon the subject of laches is well stated in

the case of German American Seminary v. Kiefer, 43 Mich. 105. That was a proceeding in equity to compel the defendant to account for money which it is claimed was held by him in trust for the seminary. In the discussion of the propositions involved in that case, the court thus very clearly and correctly stated the reasons for the rule in the application of the doctrine of laches: ''But another fact is also of high importance. While complainant has been delaying to bring suit against this defendant, quite a number of persons who must have known the principal facts in the case have been taken away by death. Among these are Karl Busch and Edward Eccard, two of the trustees who were present at the sale, Rudolph Diefenbeck, who acted as auctioneer in making the sale; Anthony Lederle, who was prominent as a member of the corporation in making the sale, and Arnold Kaichen, one of the purchasers. Thus a very considerable proportion of all the persons who presumptively knew all the facts can no longer testify to them, and it is manifest from the discrepancies in the testimony given by others that their memory of the facts has been much obscured by time. If the defendant's connection with the transaction had but recently come to the knowledge of the officers of the corporation, this might be no conclusive reason for refusing to the complainant relief; but it would be the height of injustice to permit complainant, with full knowledge of the facts, to delay suit while the persons who were familiar with the facts were one by one passing away, and at last bring suit under circumstances which at the best must leave the court in doubt whether the remaining evidence does not disclose a partial, defective and misleading case. A court of equity ought to refuse interference under such circumsances. [Campan v. Van Dyke, 15 Mich. 371; Russell v. Miller, 26 Mich. 1.]''

Mr. Justice FULLER, in Hammond v. Hopkins, 143

U. S. 1. c. 274, thus very appropriately expresses the necessity and reason for the rigid enforcement of the rule of diligence: "Where the seal of death has closed the lips of those whose character is involved, and lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence. The hour-glass must supply the ravages of the scythe, and those who have slept upon their rights must be remitted to the repose from which they should not have been aroused."

A review of all the authorities, both in this State and foreign jurisdictions, upon the subject now under discussion, clearly demonstrates that the courts of this country are inclined to more rigidly enforce the doctrine of laches and deny recoveries on the ground of delay in the institution of either legal or equitable proceedings, where the party to the original transaction sought to be enforced is dead. This is as it should be. Take this case: the plaintiff, if entitled to any relief, was as much entitled to it at the time of the consummation of the sale by R. S. MacDonald to Chambers in 1890, as he was eleven or twelve years thereafter. The facts were all known to him, as is shown by his allegations in the petition. He knew that R. S. MacDonald had realized from the sale to Chambers more than enough to repay him for the purchase money for the original conveyance. If he is entitled to the relief now he was equally entitled to the same relief then. He took no steps during the lifetime of R. S. MacDonald to assert any rights or claim to the land in dispute, notwithstanding, under the facts disclosed in this case, there was ten years during the life of R. S. MacDonald in which to do so, and if he had any claim the courts were open to give him adequate relief. R. S. MacDonald for many years during his life dealt with this property as absolutely his own. About a year before his death he sold a part of it for over a thousand dollars; executed

his deed; it was placed on record, and he in no way consulted the plaintiff in respect to such sale, and so far as the record discloses, did not divide with the plaintiff any of the proceeds of it, and for all we know, if this proceeding had been instituted during his lifetime, he would have satisfactorily explained this entire transaction.

Under the circumstances disclosed by the record in this cause, we have no hesitancy in saying that plaintiff is not entitled to any relief.

Respondent, however, insists that the laches of plaintiff were not interposed as a defense to this action in the trial court; hence he should not be permitted to urge it in this court for the first time. Upon that proposition it is sufficient to say that under the petition and facts as developed in this cause there was no necessity for specially pleading the defense of laches on the part of the defendant in the lower court. The delay and negligence in the institution of this proceeding fully appears upon the face of the petition, and the facts as developed only tend to emphasize such negligence and delay. Again, it may be said that the Statute of Limitations was interposed in the trial court, and this was at least an indication that there was delay in the institution of this suit, and at least furnished plaintiff with a sufficient suggestion of the necessity of offering, if he had any, any excuse or reason for waiting nearly ten years and until after the death of his adversary before asserting his claim to the land in controversy. This is purely a proceeding in equity and courts of equity either grant or deny the relief sought upon the proof introduced, and the testimony as disclosed by the record in this cause, introduced on the part of the plaintiff alone, is insufficient to authorize the chancellor in granting the relief sought, or any other relief, and this is true regardless of the fact as to whether the laches of plaintiff were suggested in the trial court or not.

If the plaintiff in this cause can deprive the defend-

ants of the land inherited from their ancestor, R. S. MacDonald, upon the facts as developed at the trial and fully disclosed in the record, then we confess it furnishes strong reasons for alarm on the part of every citizen who has accumulated property and places the evidence of his title upon record, when he realizes the slender foundation upon which rests the right of those who are entitled to it after his death.

We have given expression to our views upon the record before us in this cause, which results in the conclusion that the plaintiff is not entitled to any relief in this proceeding, and that the judgment and decree of the trial court should be reversed, and it is so ordered.

All concur.